IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| MAINES PAPER & FOOD SERVICE, INC., *et al.*[1] | ) Case No. 20-11502 (KBO) |
| | ) |
| Debtors. | ) (Joint Administration Requested) |
| | ) |

## DEBTORS' APPLICATION FOR APPOINTMENT OF STRETTO AS CLAIMS AND NOTICING AGENT

The above-captioned debtors and debtors in possession (collectively, the "Debtors") respectfully state as follows in support of this application (the "Application"):[2]

### Relief Requested

1. The Debtors seek entry of an order, substantially in the form attached hereto as **Exhibit A**, appointing Stretto ("Stretto")[3] as claims and noticing agent ("Claims and Noticing Agent") in the Debtors' chapter 11 cases effective *nunc pro tunc* to the Petition Date. In support of this Application, the Debtors submit the Declaration of Sheryl Betance (the "Betance Declaration"), attached hereto as **Exhibit B**.

---

[1] The Debtors, along with the last four (4) digits of each Debtor's federal tax identification number are: Maines Paper & Food Service, Inc. (7759); Maines Funding Corporation (2136); Maines Paper & Food Service - Chicago, Inc. (9916); Maines Paper & Food Service - Dallas, Inc. (8533); Maines Paper & Food Service - Great Lakes, Inc. (3029); Maines Paper & Food Service - Maryland, Inc. (2317); Maines Paper & Food Service - Mid-Atlantic, Inc. (3028); Maines Paper & Food Service - New England, Inc. (3026); Maines Paper & Food Service - NY Metro, Inc. (3024); Maines Paper & Food Service - Ohio, Inc. (3023); Maines Paper & Food Service - Tennessee, Inc. (5934); Maines Paper & Food Service - Worcester, Inc. (1866); and Warehouse & Logistics, Inc. (5921). The Debtors' business address is 101 Broome Corporate Parkway, Conklin, New York 13748.

[2] A detailed description of the Debtors and their business, and the facts and circumstances supporting the Debtors' chapter 11 cases, are set forth in greater detail in the *Declaration of John C. DiDonato in Support of Debtors' Chapter 11 Petitions and First Day Relief* (the "First Day Declaration"), filed contemporaneously with this Application. Capitalized terms used but not otherwise defined in this motion shall have the meanings given to them in the First Day Declaration.

[3] Stretto is the trade name of Bankruptcy Management Solutions, Inc., and its subsidiaries.

**Jurisdiction and Venue**

2. The United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the District of Delaware*, dated February 29, 2012. The Debtors confirm their consent, pursuant to rule 9013-1(f) of the Local Rules of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), to the entry of a final order by the Bankruptcy Court in connection with this Application to the extent that it is later determined that the Bankruptcy Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

3. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

4. The bases for the relief requested herein are section 156(c) of title 28 of the United States Code, section 105(a) of title 11 of the United States Code, 11. U.S.C. §§ 101-1532 (the "Bankruptcy Code"), Bankruptcy Local Rules 2002-1(f) and 9013-1(m), and the Bankruptcy Court's *Protocol for the Employment of Claims and Noticing Agents Under 28 U.S.C. § 156(c)*, instituted by the Clerk on February 1, 2012 (the "Claims Agent Protocol").

**Background**

5. On the date hereof (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. The Debtors are operating their businesses and managing their properties as debtors in possession pursuant to Bankruptcy Code sections 1107(a) and 1108. No trustee or examiner has been appointed in the Debtors' chapter 11 cases, and no committees have been appointed or designated.

2

6. The Debtors formerly operated as a private foodservice distributor. Founded in 1919 as a distributor of nickel candy to local grocers, the company broadened its product base with fountain supplies, toys and paper products in the 1940s, and expanded into foodservice in the 1970s. The Debtors operated through five primary business segments: (i) providing streamlined foodservice supply chain solutions for multi-unit restaurant chains; (ii) providing foodservice products and distribution solutions for local restaurants and independent, casual dining establishments, such as pizzerias and coffee shops; (iii) providing foodservice products and distribution solutions for large institutions with a few locations, such as universities and hospitals; (iv) providing foodservice products on a smaller scale to local operators, retail clients and event planners; and (v) providing foodservice products to other distributors.

7. On May 17, 2020 (the "Foreclosure Date"), the Debtors' largest secured creditor, Lineage Bluebird Debtco, LLC ("Lineage"), foreclosed upon the Debtors' assets pursuant to that *Strict Foreclosure, Deed in Lieu and Settlement Agreement*, dated as of May 17, 2020 the "Foreclosure Agreement"). Pursuant to the Foreclosure Agreement, Lineage acquired substantially all of the Company's assets, including the Debtors' inventory and receivables, provided a contribution of $5.2 million in cash to fund the Debtor's wind down through these chapter 11 cases, and agreed to fund payment of certain prepetition obligations of the Debtors including but not limited to: (a) the Debtors' outstanding sale and use tax obligations as of the Foreclosure Date and (b) certain of the Debtors' outstanding obligations to suppliers of perishable agricultural commodities and other similar products (collectively as described by the Foreclosure Agreement, the "Lineage Funded Expenses").

8. In connection with the Foreclosure Agreement, Debtor Maines Paper & Food Service, Inc. and Lineage also executed that certain *Transition Services Agreement*, dated as of

3

May 17, 2020 (the "TSA"). Under the TSA, the Debtors will provide Lineage with certain transitional services on a short term basis in order to effectuate the smooth transition of the business to Lineage. During the transition period envisioned under the TSA, the Debtors will pay both the Lineage Funded Expenses and ordinary course post-petition expenses through its normal cash management system.

9. The factual background regarding the Debtors, including their historical business operations and the events precipitating the chapter 11 filing, is set forth in detail in the *Declaration of John C. DiDonato in Support of First Day Motions* (the "First Day Declaration") filed concurrently herewith and fully incorporated herein by reference.

## Basis for Relief

10. The Debtors request entry of an order appointing Stretto as the Claims and Noticing Agent for the Debtors and their chapter 11 cases, including assuming full responsibility for the distribution of notices and the maintenance, processing, and docketing of proofs of claim filed in the Debtors' chapter 11 cases. The Debtors' selection of Stretto to act as the Claims and Noticing Agent satisfies the Claims Agent Protocol, in that the Debtors obtained and reviewed engagement proposals from at least two other court-approved claims and noticing agents to ensure selection through a competitive process. Moreover, the Debtors submit, based on all engagement proposals obtained and reviewed, that Stretto's rates are competitive and reasonable given Stretto's quality of services and expertise. The terms of Stretto's retention are set forth in the Engagement Agreement attached as **Exhibit 1** to the Order (the "Engagement Agreement"); *provided* that the Debtors are seeking approval solely of the terms and provisions of the Engagement Agreement as set forth in this Application and the proposed Order attached hereto.

11. Although the Debtors have not yet filed their schedules of assets and liabilities, they anticipate that there will be thousands of entities to be noticed. Local Rule 2002-1(f) provides that "[i]n all cases with more than 200 creditors or parties in interest listed on the creditor matrix, unless the Bankruptcy Court orders otherwise, the debtor shall file [a] motion [to retain a claims and noticing agent] on the first day of the case or within seven (7) days thereafter." In view of the number of anticipated claimants and the complexity of the Debtors' business, the Debtors submit that the appointment of a claims and noticing agent is required by Local Rule 2002-1(f) and is otherwise in the best interests of both the Debtors' estates and their creditors.

12. Rule 2002 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") generally regulates what notices must be given to creditors and other parties in interest in bankruptcy cases. Fed. R. Bankr. P. 2002(f). Under Bankruptcy Rule 2002(f), the Bankruptcy Court may direct that some person other than the Clerk give notice of the various matters described below. Moreover, section 156(c) of title 28 of the United States Code, which governs the staffing and expenses of a bankruptcy court, authorizes the Bankruptcy Court to use "facilities" or "services" other than the Clerk for administration of bankruptcy cases. 28 U.S.C. § 156(c). Specifically, the statute states, in relevant part:

> Any court may utilize facilities or services, either on or off the court's premises, which pertain to the provision of notices, dockets, calendars and other administrative information to parties in cases filed under the provisions of title 11, United States Code, where the costs of such facilities or services are paid for out of the assets of the estate and are not charged to the United States. The utilization of such facilities or services shall be subject to such conditions and limitations as the pertinent circuit council may prescribe.

28 U.S.C. § 156(c).

13. In addition, Local Rule 2002-1(f) provides:

5

> Upon motion of the debtor or trustee, at any time without notice or hearing, the Court may authorize the retention of a notice and/or claims clerk under 28 U.S.C. § 156(c). In all cases with more than 200 creditors or parties in interest listed on the creditor matrix, unless the Court orders otherwise, the debtor shall file such motion on the first day of the case or within seven days thereafter. The notice and/or claims clerk shall comply with the Protocol for the Employment of Claims and Noticing Agents under 28 U.S.C. § 156(c) (which can be found on the Court's website) and shall perform the [claims and noticing services].

Del. Bankr. L.R. 2002-1(f). Accordingly, Bankruptcy Rule 2002, Local Rule 2002-1(f), and section 156(c) of title 28 of the United States Code empower the Bankruptcy Court to utilize outside agents and facilities for notice and claims purposes, provided that the Debtors' estates bear the cost of such services.

14. For all of the foregoing reasons, the Debtors believe that the appointment of Stretto as the Claims and Noticing Agent in these chapter 11 cases is necessary and in the best interests of the Debtors, their estates and creditors, and all parties in interest. Furthermore, the Debtors respectfully submit that the fees and expenses that would be incurred by Stretto under the proposed engagement would be administrative in nature and, therefore, should not be subject to standard fee application procedures of professionals.

15. By separate application, the Debtors intend to seek authorization to retain and employ Stretto as the administrative agent in these chapter 11 cases, pursuant to section 327(a) of the Bankruptcy Code, because the administration of the chapter 11 cases will require Stretto to perform duties outside the scope of 28 U.S.C. § 156(c).

## Stretto's Qualifications

16.     Stretto is a chapter 11 administrator comprised of leading industry professionals with significant experience in both the legal and administrative aspects of large, complex chapter 11 cases. Stretto's professionals have experience in noticing, claims administration, solicitation, balloting, and facilitating other administrative aspects of chapter 11 cases and experience in matters of this size and complexity. Stretto's professionals have acted as official claims and noticing agent in many large bankruptcy cases in this district and in other districts nationwide. Stretto has developed efficient and cost-effective methods to handle the voluminous mailings associated with the noticing and claims processing portions of chapter 11 cases to ensure the efficient, orderly and fair treatment of creditors, equity security holders, and all parties in interest. Stretto's active and former cases include: *In re Superior Air Charter, LLC*, Case No. 20-11007 (CSS) (Bankr. D. Del. Apr. 29, 2020); *In re True Religion Apparel, Inc.*, Case No. 20-10941 (CSS) (Bankr. D. Del. Apr. 14, 2020); *In re Ravn Air Group, Inc.*, Case No. 20-10755 (BLS) (Bankr. D. Del. Apr. 7, 2020); *In re Rudy's Barbershop Holdings, LLC*, Case No. 20-10746 (LSS) (Bankr. D. Del. Apr. 6, 2020); *In re API Americas Inc.*, Case No. 20-10239 (CSS) (Bankr. D. Del. Feb. 4, 2020); *In re REVA Medical, Inc.*, Case No. 20-10072 (JTD) (Bankr. D. Del. Jan. 16, 2020); *In re Clover Technologies Group, LLC*, Case No. 19-12680 (KBO) (Bankr. D. Del. Dec. 23, 2019); *In re MTE Holdings LLC*, Case No. 19-12269 (KBO) (Bankr. D. Del. Nov. 15 2019); *In re Fleetwood Acquisition Corp.*, Case No. 19-12330 (KG) (Bankr. D. Del. Nov. 5, 2019); *In re News-Gazette, Inc.*, Case No. 19-11901 (KBO) (Bankr. D. Del. Sept. 4, 2019); *In re Loot Crate, Inc.*, Case No. 19-11791 (BLS) (Bankr. D. Del. Aug. 14, 2019); *In re IPic-Gold Class Entm't, LLC*, Case No. 19-11739 (LSS) (Bankr. D. Del. Aug. 6, 2019).

DOCS_DE:228953.3 54433/001

17. By appointing Stretto as the Claims and Noticing Agent in these chapter 11 cases, the distribution of notices and the processing of claims will be expedited, and the Office of the Clerk of the Bankruptcy Court (the "Clerk") will be relieved of the administrative burden of processing what may be an overwhelming number of claims.

### Services to be Provided

18. This Application pertains only to the work to be performed by Stretto under the Clerk's delegation of duties permitted by 28 U.S.C. § 156(c) and Local Rule 2002-1(f). Any work to be performed by Stretto outside of this scope is not covered by this Application or by any order granting approval hereof. Specifically, Stretto will perform the following tasks, as necessary, in its role as Claims and Noticing Agent, as well as all quality control relating thereto:

(a) Prepare and serve required notices and documents in these chapter 11 cases in accordance with the Bankruptcy Code and the Bankruptcy Rules in the form and manner directed by the Debtors and/or the Bankruptcy Court, including (i) notice of the commencement of these chapter 11 cases and the initial meeting of creditors under Bankruptcy Code § 341(a), (ii) notice of any claims bar date, (iii) notices of transfers of claims, (iv) notices of objections to claims and objections to transfers of claims, (v) notices of any hearings on a disclosure statement and confirmation of the Debtors' plan or plans of reorganization, including under Bankruptcy Rule 3017(d), (vi) notice of the effective date of any plan, and (vii) all other notices, orders, pleadings, publications and other documents as the Debtors or Bankruptcy Court may deem necessary or appropriate for an orderly administration of these chapter 11 cases;

(b) Maintain an official copy of the Debtors' schedules of assets and liabilities and statements of financial affairs (collectively, the "Schedules"), listing the Debtors' known creditors and the amounts owed thereto;

(c) Maintain (i) a list of all potential creditors, equity holders, and other parties-in-interest and (ii) a "core" mailing list consisting of all parties described in Bankruptcy Rule 2002(i), (j), and (k) and those parties that have filed a notice of appearance pursuant to Bankruptcy Rule 9010; update and make said lists available upon request by a party-in-interest or the Clerk;

(d) Furnish a notice to all potential creditors of the last date for filing proofs of claim and a form for filing a proof of claim, after such notice and form are approved by the Bankruptcy Court, and notify said potential creditors of the

existence, amount, and classification of their respective claims as set forth in the Schedules, which may be effected by inclusion of such information (or the lack thereof, in cases where the Schedules indicate no debt due to the subject party) on a customized proof of claim form provided to potential creditors;

(e) Maintain a post office box or address for the purpose of receiving claims and returned mail, and process all mail received;

(f) Maintain an electronic platform for purposes of filing proofs of claim;

(g) For all notices, motions, orders, or other pleadings or documents served, prepare and file, or cause to be filed with the Clerk, an affidavit or certificate of service within seven business days of service which includes (i) either a copy of the notice served or the docket number(s) and title(s) of the pleading(s) served, (ii) a list of persons to whom it was mailed (in alphabetical order) with their addresses, (iii) the manner of service, and (iv) the date served;

(h) Process all proofs of claim received, including those received by the Clerk, check said processing for accuracy, and maintain the original proofs of claim in a secure area;

(i) Maintain the official claims register for each Debtor (collectively, the "Claims Registers") on behalf of the Clerk; upon the Clerk's request, provide the Clerk with certified, duplicate unofficial Claims Registers; and specify in the Claims Registers the following information for each claim docketed: (i) the claim number assigned; (ii) the date received; (iii) the name and address of the claimant and agent, if applicable, who filed the claim; (iv) the amount asserted; (v) the asserted classification(s) of the claim (e.g., secured, unsecured, priority, etc.); (vi) the applicable Debtor; and (vii) any disposition of the claim;

(j) Provide public access to the Claims Registers, including complete proofs of claim with attachments, if any, without charge;

(k) Implement necessary security measures to ensure the completeness and integrity of the Claims Registers and the safekeeping of the original claims;

(l) Record all transfers of claims and provide any notices of such transfers as required by Bankruptcy Rule 3001(e);

(m) Relocate, by messenger or overnight delivery, all of the court-filed proofs of claim to the offices of Stretto, not less than weekly;

(n) Upon completion of the docketing process for all claims received to date for each case, turn over to the Clerk copies of the Claims Registers for the Clerk's review (upon the Clerk's request);

9

    (o)    Monitor the Bankruptcy Court's docket for all notices of appearance, address changes, and claims-related pleadings and orders filed and make necessary notations on and/or changes to the claims register and any service or mailing lists, including to identify and eliminate duplicative names and addresses from such lists;

    (p)    Identify and correct any incomplete or incorrect addresses in any mailing or service lists (to the extent such information available);

    (q)    Assist in the dissemination of information to the public and respond to requests for administrative information regarding these chapter 11 cases as directed by the Debtors or the Bankruptcy Court, including through the use of a case website and/or call center;

    (r)    If these chapter 11 cases are converted to cases under chapter 7 of the Bankruptcy Code, contact the Clerk's office within three days of notice to Stretto of entry of the order converting the cases;

    (s)    Thirty days prior to the close of these chapter 11 cases, to the extent practicable, request that the Debtors submit to the Bankruptcy Court a proposed order dismissing Stretto as Claims and Noticing Agent and terminating its services in such capacity upon completion of its duties and responsibilities and upon the closing of these chapter 11 cases;

    (t)    Within seven days of notice to Stretto of entry of an order closing these chapter 11 cases, provide to the Bankruptcy Court the final version of the Claims Registers as of the date immediately before the close of the chapter 11 cases; and

    (u)    At the close of these chapter 11 cases, (i) box and transport all original documents, in proper format, as provided by the Clerk's office, to (A) the Philadelphia Federal Records Center, 14700 Townsend Road, Philadelphia, PA 19154-1096 or (B) any other location requested by the Clerk's office, and (ii) docket a completed SF-135 Form indicating the accession and location numbers of the archived claims.

19.    The Claims Registers shall be open to the public for examination without charge during regular business hours and on a case-specific website maintained by Stretto.

### Professional Compensation

20.    The Debtors respectfully request that the undisputed fees and expenses incurred by Stretto in the performance of the above services be treated as administrative expenses of the Debtors' chapter 11 estates pursuant to 28 U.S.C. § 156(c) and section 503(b)(1)(A) of the

10

Bankruptcy Code and be paid in the ordinary course of business without further application to or order of the Bankruptcy Court. Stretto agrees to maintain records of all services showing dates, categories of services, fees charged, and expenses incurred, and to serve monthly invoices on the Debtors, the office of the United States Trustee, counsel for the Debtors, counsel for any official committee monitoring the expenses of the Debtors, and any party-in-interest who specifically requests service of the monthly invoices. If any dispute arises relating to the Engagement Agreement or monthly invoices, the parties shall meet and confer in an attempt to resolve the dispute; if resolution is not achieved, the parties may seek resolution of the matter from the Bankruptcy Court.

21. Prior to the Petition Date, the Debtors provided Stretto an advance in the amount of $100,000. Stretto seeks to first apply the advance to all prepetition invoices, and thereafter, to have the advance replenished to the original advance amount, and thereafter, to hold the advance under the Engagement Agreement during these chapter 11 cases as security for the payment of fees and expenses incurred under the Engagement Agreement.

22. Additionally, under the terms of the Engagement Agreement, the Debtors have agreed to indemnify, defend, and hold harmless Stretto and its members, officers, employees, representatives, and agents under certain circumstances specified in the Engagement Agreement, except in circumstances resulting solely from Stretto's gross negligence or willful misconduct or as otherwise provided in the Engagement Agreement or Order. The Debtors believe that such an indemnification obligation is customary, reasonable, and necessary to retain the services of a Claims and Noticing Agent in these chapter 11 cases.

DOCS_DE:228953.3 54433/001

## Disinterestedness

23. Although the Debtors do not propose to employ Stretto under section 327 of the Bankruptcy Code pursuant to this Application (such retention will be sought by separate application), Stretto has nonetheless reviewed its electronic database to determine whether it has any relationships with the creditors and parties in interest provided by the Debtors, and, to the best of the Debtors' knowledge, information, and belief, and except as disclosed in the Betance Declaration, Stretto has represented that it neither holds nor represents any interest materially adverse to the Debtors' estates in connection with any matter on which it would be employed.

24. Moreover, in connection with its retention as Claims and Noticing Agent, Stretto represents in the Betance Declaration, among other things, that:

(a) Stretto is not a creditor of the Debtors;

(b) Stretto will not consider itself employed by the United States government and shall not seek any compensation from the United States government in its capacity as the Claims and Noticing Agent in these chapter 11 cases;

(c) By accepting employment in these chapter 11 cases, Stretto waives any rights to receive compensation from the United States government in connection with these chapter 11 cases;

(d) In its capacity as the Claims and Noticing Agent in these chapter 11 cases, Stretto will not be an agent of the United States and will not act on behalf of the United States;

(e) Stretto will not employ any past or present employees of the Debtors in connection with its work as the Claims and Noticing Agent in these chapter 11 cases;

(f) Stretto is a "disinterested person" as that term is defined in section 101(14) of the Bankruptcy Code with respect to the matters upon which it is to be engaged;

(g) In its capacity as Claims and Noticing Agent in these chapter 11 cases, Stretto will not intentionally misrepresent any fact to any person;

(h) Stretto shall be under the supervision and control of the Clerk's office with respect to the receipt and recordation of claims and claim transfers;

  (i)  Stretto will comply with all requests of the Clerk's office and the guidelines promulgated by the Judicial Conference of the United States for the implementation of 28 U.S.C. § 156(c); and

  (j)  None of the services provided by Stretto as Claims and Noticing Agent in these chapter 11 cases shall be at the expense of the Clerk's office.

25. Stretto will supplement its disclosure to the Bankruptcy Court if any facts or circumstances are discovered that would require such additional disclosure.

## Compliance with Claims and Noticing Agent Protocol

26. This Application complies with the Claims Agent Protocol, in that the Debtors have obtained and reviewed engagement proposals from at least two other Bankruptcy Court-approved claims and noticing agents to ensure selection through a competitive process. Moreover, the Debtors submit, based on all engagement proposals obtained and reviewed, that Stretto's rates are competitive and reasonable given Stretto's quality of services and expertise.

27. To the extent that there is any inconsistency between this Application, the Order, and the Engagement Agreement, the Order shall govern.

## Waiver of Bankruptcy Rule 6004(a) and 6004(h)

28. To implement the foregoing successfully, the Debtors seek a waiver of the notice requirements under Bankruptcy Rule 6004(a) and the 14-day stay of an order authorizing the use, sale, or lease of property under Bankruptcy Rule 6004(h).

## Notice

29. The Debtors have provided notice of this Application to the following parties or their respective counsel: (a) the Office of the U.S. Trustee for the District of Delaware; (b) the holders of the 30 largest unsecured claims against the Debtors (on a consolidated basis); and (c) counsel to Lineage. As the Motion is seeking "first day" relief, within two (2) business days of the hearing on the Motion, the Debtors will serve copies of the Motion and any order entered with respect to the Motion in accordance with the Local Rules. The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

## No Prior Request

30. No prior request for the relief sought in this Application has been made to this or any other court.

*[Remainder of page intentionally left blank.]*

WHEREFORE, the Debtors respectfully request that the Bankruptcy Court enter an order, substantially in the form attached hereto as **Exhibit A**, granting the relief requested herein and such other relief as the Bankruptcy Court deems appropriate under the circumstances.

Dated: June 10, 2020
Wilmington, Delaware

John C. DiDonato
Chief Restructuring Officer
Maines Paper and Food Service, Inc.