IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>MAINES PAPER & FOOD SERVICE, INC., *et al.*,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 20-11502 (KBO)<br><br>(Jointly Administered) |

## DEBTORS' FIRST AMENDED JOINT PLAN OF LIQUIDATION PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE

**PACHULSKI STANG ZIEHL & JONES LLP**
Laura Davis Jones (Bar No. 2436)
David M. Bertenthal (CA Bar No. 167624)
Timothy P. Cairns (Bar No. 4228)
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, Delaware 19899-8705 (Courier 19801)
Telephone: 302-652-4100
Facsimile: 302-652-4400
email: ljones@pszjlaw.com
        dbertenthal@pszjlaw.com
        tcairns@pszjlaw.com

Counsel for Debtors and Debtors in Possession

Dated: August 28, 2020

---

[1] The Debtors, along with the last four (4) digits of each Debtor's federal tax identification number are: Maines Paper & Food Service, Inc. (7759); Maines Funding Corporation (2136); Maines Paper & Food Service - Chicago, Inc. (9916); Maines Paper & Food Service - Dallas, Inc. (8533); Maines Paper & Food Service - Great Lakes, Inc. (3029); Maines Paper & Food Service - Maryland, Inc. (2317); Maines Paper & Food Service - Mid-Atlantic, Inc. (3028); Maines Paper & Food Service - New England, Inc. (3026); Maines Paper & Food Service - NY Metro, Inc. (3024); Maines Paper & Food Service - Ohio, Inc. (3023); Maines Paper & Food Service - Tennessee, Inc. (5934); Maines Paper & Food Service - Worcester, Inc. (1866); and Warehouse & Logistics, Inc. (5921). The Debtors' business address is 101 Broome Corporate Parkway, Conklin, New York 13748.

# TABLE OF CONTENTS

**Page**

I. DEFINED TERMS, RULES OF INTERPRETATION, COMPUTATION OF TIME AND GOVERNING LAW................................................................................................3

    A.    Rules of Interpretation, Computation of Time and Governing Law.............................. 3

    B.    Defined Terms ........................................................................................................ 4

II. UNCLASSIFIED ADMINISTRATIVE CLAIMS, PROFESSIONAL FEES,  AND PRIORITY TAX CLAIMS................................................................................................28

    A.    Introduction............................................................................................................ 28

    B.    Administrative Claims ............................................................................................ 29

    C.    Professional Fee Claims.......................................................................................... 30

    D.    Priority Tax Claims ................................................................................................ 31

III. CLASSIFICATION AND TREATMENT OF CLASSIFIED CLAIMS AND EQUITY INTERESTS ................................................................................................31

    A.    Summary................................................................................................................ 31

    B.    Classification and Treatment of Claims Against the Debtors....................................... 32

IV. ACCEPTANCE OR REJECTION OF THE PLAN ..............................................37

    A.    Voting Classes ...................................................................................................... 37

    B.    Presumed Acceptance of Plan.................................................................................. 38

    C.    Presumed Rejection of Plan ..................................................................................... 39

    D.    Nonconsensual Confirmation.................................................................................... 39

V. MEANS FOR IMPLEMENTATION OF THE PLAN ............................................39

    A.    No Substantive Consolidation.................................................................................. 39

    B.    Dissolution of Debtors ............................................................................................ 39

    C.    The Oversight Committee........................................................................................ 40

    D.    Appointment of the Liquidating Trustee.................................................................... 42

    E.    The Liquidating Trust ............................................................................................ 43

    F.    Rights and Powers of the Liquidating Trustee........................................................... 45

    G.    Fees and Expenses of the Liquidating Trust .............................................................. 46

    H.    Transfer of Beneficial Interests in the Liquidating Trust............................................. 46

    I.    Available Cash....................................................................................................... 46

J.      Litigation. ..................................................................................................... 47

K.     Dissolution of Committee. ............................................................................. 48

L.     Full and Final Satisfaction. ........................................................................... 48

M.    Distribution Procedures. ............................................................................... 49

N.     Liquidating Trust Assets Account. ............................................................... 51

O.     Resolution of Disputed Claims. .................................................................... 51

P.     Reserve Provisions for Disputed Claims. ..................................................... 54

Q.     Rounding. ....................................................................................................... 55

R.     No Cash Payments of Less Than $20 on Account of Allowed Claims. ........ 55

S.     Delivery of Distributions and Unclaimed Property. ..................................... 56

T.     Withholding Taxes. ....................................................................................... 57

U.     United States Trustee Fees. ........................................................................... 58

V.     Books and Records. ....................................................................................... 58

VI. TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES ............... 58

A.     Rejection of Executory Contracts and Unexpired Leases ............................. 58

B.     Claims Based on Rejection of Executory Contracts or Unexpired Leases ................. 59

C.     Insurance Policies ......................................................................................... 60

VII. CONDITIONS PRECEDENT TO CONFIRMATION  OF THE PLAN AND TO THE EFFECTIVE DATE ......................................................................................................... 61

A.     Conditions to Confirmation of the Plan. ...................................................... 61

B.     Effect of Failure of Conditions to Confirmation. ......................................... 61

C.     Conditions to Effective Date ......................................................................... 61

D.     Effective Date. .............................................................................................. 62

VIII. EFFECTS OF CONFIRMATION ......................................................................... 62

A.     Binding Effect of Plan. ................................................................................. 62

B.     Vesting of Property of Debtors in the Liquidating Trust. ............................. 63

C.     Property Free and Clear. ............................................................................... 63

D.     Exculpation. .................................................................................................. 64

E.     Releases. ........................................................................................................ 64

F.     Injunction. ..................................................................................................... 69

G.     Post-Confirmation Liability of Liquidating Trustee and Oversight Committee. .......... 70

H.     Preservation of Rights of Action .................................................................. 72

I.     No Discharge. ........................................................................................................ 74

IX. RETENTION OF JURISDICTION ................................................................................ 74

X. MISCELLANEOUS ........................................................................................................ 76

A.     Revocation of Plan. ...................................................................................... 76

B.     Severability of Plan Provisions. ................................................................... 76

C.     Exhibits. ....................................................................................................... 77

D.     Notices. ......................................................................................................... 77

E.     Reservation of Rights. .................................................................................. 78

F.     Defects, Omissions and Amendments. ......................................................... 79

G.     Filing of Additional Documents. .................................................................. 79

H.     Successors and Assigns. ............................................................................... 80

I.     Setoffs and Recoupments. ............................................................................ 80

J.     Tax Exemption. ............................................................................................ 80

K.     Securities Exemption .................................................................................... 81

L.     Implementation. ........................................................................................... 81

M.     Record Date. ................................................................................................. 81

N.     Certain Actions. ............................................................................................ 81

O.     Substantial Consummation. .......................................................................... 82

P.     Waiver of Fourteen-Day Stay. ..................................................................... 83

**Preliminary Statement**

Pursuant to Chapter 11, Title 11 of the United States Code, 11 U.S.C. §§ 101-1532, Maines Paper and Food Service, Inc. and its debtor affiliates (the "Debtors" or "Maines") in the above-captioned Chapter 11 cases (the "Chapter 11 Cases") hereby propose the following First Amended Joint Plan of Liquidation (as may be amended or modified, the "Plan").[2]  Reference is made to the Disclosure Statement accompanying the Plan, including the exhibits thereto, for a discussion of the Debtors' history, businesses, results of operations, the anticipated disposition of substantially all of the Debtors' assets, and a summary and analysis of the Plan.  All Creditors entitled to vote on the Plan should read the Disclosure Statement and the Plan carefully—and consult with their counsel and other applicable professionals—before voting to accept or reject the Plan.

The Plan is a plan of liquidation which, among other things, provides for a Liquidating Trustee to liquidate or otherwise dispose of the remaining assets of the Debtors' estates (the "Estates"), if and to the extent such assets were not previously monetized to Cash or otherwise transferred by the Debtors prior to the Effective Date (including, without limitation, the prepetition transfer of certain assets of the Debtors to the ABL Agent pursuant to the Strict Foreclosure Agreement), and to distribute all net proceeds to creditors generally in accordance with the priority scheme under the Bankruptcy Code, subject to the terms of the Plan, the Strict Foreclosure Agreement, and the Cash Collateral Orders; *provided, however,* under the Plan, the Debtor Release and the Third Party Release that are in favor of the ABL Agent, the ABL

---

[2]  Capitalized terms not otherwise defined herein shall have the meaning ascribed to such terms in this Plan.

Lenders, and their respective Related Persons, are solely contingent on the ABL Agent releasing from escrow (such escrow to be funded by the ABL Agent within one (1) business day of the Confirmation Date) to the Liquidating Trustee the $2,000,000 GUC Fund, which fund will be used solely to first fund the administration of the Liquidating Trust including prosecuting claims against the Maines Brothers and W&D Entities, and any remaining cash in the GUC Fund shall be used to make distributions on account of Allowed Unsecured Claims pursuant to the Plan and Liquidating Trust Agreement. The Plan proposes to vest all of the assets of the Debtors into a single Liquidating Trust for administration and distribution in accordance with the Plan and the Liquidating Trust Agreement.

With the Plan, Creditors entitled to vote will receive a Ballot for voting on the Plan and a Disclosure Statement that provides information concerning the Debtors and the Plan. The Disclosure Statement includes a summary of the remaining assets and liabilities of the Debtors, a summary of what Creditors and Equity Interest Holders will receive under the Plan, a summary of the procedures and voting requirements necessary for confirmation of the Plan, and a discussion of certain alternatives to the Plan in the event that the Plan is not confirmed.

As more fully described in the Disclosure Statement, the Plan must be approved by the requisite number of Creditors, and the Bankruptcy Court must find that the Plan meets the applicable legal standards before it can be confirmed.[3] If the Plan is not confirmed, the Bankruptcy Court may order the Chapter 11 Cases dismissed or converted to liquidating cases

---

[3] Equity Interest Holders will receive nothing under the Plan, and therefore, the Class of Equity Interests is deemed to have rejected the Plan. Accordingly, acceptances are not being solicited from the Holders of Equity Interests.

under Chapter 7 of the Bankruptcy Code, or the Debtors or other parties in interest may propose a different plan.

<h1 style="text-align:center">I.</h1>

<h2 style="text-align:center"><u>DEFINED TERMS, RULES OF INTERPRETATION, COMPUTATION</u></h2>

<h2 style="text-align:center"><u>OF TIME AND GOVERNING LAW</u></h2>

**A.**     <u>**Rules of Interpretation, Computation of Time and Governing Law**</u>

1.     For purposes of the Plan: (a) whenever from the context it is appropriate, each term, whether stated in the singular or the plural, shall include both the singular and the plural, and each pronoun, whether stated in the masculine, feminine, or neuter gender, shall include the masculine, feminine, and the neuter gender; (b) any reference in the Plan to a contract, instrument, release, indenture, or other agreement or document being in a particular form or on particular terms and conditions means that such document shall be substantially in such form or substantially on such terms and conditions; (c) any reference in the Plan to an existing document or exhibit filed, or to be filed, shall mean such document or exhibit, as it may have been or may be amended, modified, or supplemented; (d) unless otherwise specified, all references in the Plan to Sections, Articles, and Exhibits are references to Sections, Articles, and Exhibits of or to the Plan; (e) the words "herein," "hereof," "hereunder," and "hereto" and similar terms refer to the Plan in its entirety rather than to a particular portion of the Plan; (f) references to a part includes the whole, except where the context clearly requires otherwise; (g) unless otherwise specified, "or" has the inclusive meaning represented by the phrase "and/or"; (h) captions and headings to Articles and Sections are inserted for convenience of

3

reference only and are not intended to be a part of or to affect the interpretation of the Plan;

(i) the rules of construction set forth in Section 102 of the Bankruptcy Code shall apply; and

(j) any term used in capitalized form in the Plan that is not defined herein but that is used in the

Bankruptcy Code or the Bankruptcy Rules shall have the meaning assigned to such term in the

Bankruptcy Code or the Bankruptcy Rules, as the case may be.

2.       In computing any period of time prescribed or allowed by the Plan, the

provisions of Bankruptcy Rule 9006(a) shall apply.

3.       Except to the extent that the Bankruptcy Code or Bankruptcy Rules are

applicable, and subject to the provisions of any contract, instrument, release, indenture, or other

agreement or document entered into in connection with the Plan, the rights and obligations

arising under the Plan shall be governed by, and construed and enforced in accordance with, the

laws of the State of Delaware, without giving effect to the principles of conflict of laws thereof.

## B.    <u>Defined Terms</u>

Unless the context otherwise requires, the following terms shall have the following

meanings when used in capitalized form in the Plan:

1.       "<u>ABL Agent</u>" means Lineage, successor-in-interest to PNC Bank,

National Association, and any successor thereto, solely, in its capacity as agent for the ABL

Lenders under the ABL Credit Agreement.

2.       "<u>ABL Collateral</u>" means (i) the "Collateral" as defined in the ABL Credit

Agreement, in which the ABL Loan Agent holds a first-priority security interest securing the

Debtors' obligations under the ABL Credit Agreement, subject to the ABL Credit Agreement,

the applicable Intercreditor Agreement(s), and related documents, and (ii) the Term Loan

Collateral, in which the ABL Loan Agent holds a second-priority security interest securing the

Debtors' obligations under the ABL Credit Agreement, subject to the ABL Credit Agreement,

the applicable Intercreditor Agreement(s), and related documents.

3. "ABL Credit Agreement" means that certain *Amended and Restated*

*Revolving Credit Agreement*, dated as of August 10, 2017, by and among the Debtors, as

borrowers, the ABL Agent, and the ABL Lenders, as amended, supplemented, or otherwise

modified from time to time.

4. "ABL Lenders" means the lenders under the ABL Credit Agreement from

time to time.

5. "ABL Secured Claim" means any Secured Claim against any of the

Debtors arising from or based upon the ABL Credit Agreement.

6. "Administrative Claim" means a Claim for an expense of administration

of the Chapter 11 Cases arising under Sections 503(b), 507(b), 503(b)(9) or 1114(e)(2) of the

Bankruptcy Code, including: (a) the actual and necessary costs and expenses incurred after the

Petition Date of preserving the Estates; (b) the value of any goods received by the Debtors within

20 days before the Petition Date to the extent that goods were sold to the Debtors in the ordinary

course of the Debtors' business; (c) Professional Fee Claims; (d) all fees and charges assessed

against the Estates under 28 U.S.C. §§ 1911-1930; (e) all obligations designated as Allowed

Administrative Claims pursuant to an order of the Bankruptcy Court; (f) administrative claims

that were timely filed prior to the Administrative Expense Bar Date; and (g) any Tax Claims

5

incurred by the Debtors after the Petition Date or relating to a tax year or period which occurs after the Petition Date.

7. "<u>Administrative Expense Bar Date</u>" means the applicable last date, at 5:00 p.m. Eastern time, set by the Bankruptcy Court for a Claimant to file a request for payment of any Administrative Claim (excluding Professional Fee Claims) arising on or after the Petition Date, through and including the Effective Date. The Administrative Expense Bar Date shall be sixty (60) days after the Effective Date.

8. "<u>Allowed</u>" means, with respect to any Claim, except as otherwise provided herein: (a) a Claim that has been scheduled by the Debtors on their respective Schedules as other than disputed, contingent, or unliquidated and, as to which, the Debtors, the Liquidating Trustee or other party in interest have not filed an objection on or before the Claims Objection Deadline; (b) a Claim that is set forth in a timely filed Proof of Claim as to which no objection has been filed and which is not otherwise a Disputed Claim; (c) a Claim that has been allowed by a Final Order; (d) a Claim that is allowed: (i) in any stipulation of amount and nature of Claim executed by the Debtors prior to the Effective Date and approved by the Bankruptcy Court; (ii) in any stipulation of amount and nature of Claim executed by the Liquidating Trustee on or after the Effective Date; (iii) in any stipulation of amount and nature of any Administrative Claim, Priority Non-Tax Claim, or Priority Tax Claim executed by (y) the Debtors and approved by the Bankruptcy Court, or (z) the Liquidating Trustee; or (iv) in any contract, instrument, indenture or other agreement entered into or assumed by Debtors in connection with and in accordance with the Plan; (e) a Claim relating to a rejected executory contract or unexpired lease

that either (i) is not a Disputed Claim or (ii) has been allowed by a Final Order, in either case only if a Proof of Claim has been timely filed by the Claimant before the applicable rejection Bar Date for such claim or has otherwise been deemed timely filed under applicable law; or (f) a Claim that is allowed pursuant to the terms of this Plan.  For the purpose of determining distributions pursuant to the Plan, allowance under subsections (a) and (b) only is applicable once any of the following occur (1) before the Claims Objection Deadline, the Debtors or the Liquidating Trustee, as applicable, determine not to object to the Claim, (2) the Claims Objection Deadline passes without an objection being filed, or (3) after the Debtors or Liquidating Trustee timely object to the Claim, the Claim is allowed as provided in subparagraphs (c), (d) or (e) above.

9.      "Allowed Claim" or "Allowed … Claim" means a Claim that has been Allowed.

10.     "Available Cash" means the aggregate amount of all Cash held by the Debtors on the Effective Date allowed to be used by the Liquidating Trust to fund distributions and payments to Creditors and to pay for the expenses of the Estates and the Liquidating Trust, subject to the Cash Collateral Order and Liquidating Trust Agreement.  For the avoidance of doubt, the GUC Fund does not constitute Available Cash, and will be used to fund administration of the Liquidating Trust for the Beneficiaries and for Distributions thereto in accordance with the Plan and Liquidating Trust Agreement; and notwithstanding any other provision of the Plan or the Liquidating Trust Agreement, Available Cash will be used in the first instance by the Liquidating Trustee to pay or reserve for all unpaid Administrative Claims, Priority Tax Claims,

and Priority Non-Tax Claims (including any Disputed Claims until such Claims are resolved), prior to use of the Available Cash for purposes of the Liquidating Trust.

11.    "Ballots" mean the ballots upon which the Holders of Impaired Claims shall indicate their acceptance or rejection of the Plan in accordance with the Plan and the Voting Instructions.

12.    "Bankruptcy Code" means title I of the Bankruptcy Reform Act of 1978, as amended from time to time, as set forth in Sections 101 *et seq*. of title 11 of the United States Code, and applicable portions of titles 18 and 28 of the United States Code.

13.    "Bankruptcy Court" means the United States Bankruptcy Court for the District of Delaware having jurisdiction over the Chapter 11 Cases.

14.    "Bankruptcy Rules" means the Federal Rules of Bankruptcy Procedure, as amended from time to time, as applicable to the Chapter 11 Cases, promulgated under 28 U.S.C. § 2075 and the General and Local Rules of the Bankruptcy Court.

15.    "Bar Date" means, as applicable, the General Claims Bar Date, the Administrative Expense Bar Date, or any other applicable deadline to file Claims referenced in the Plan.

16.    "Bar Date Order" means the *Order (I) Setting Bar Dates for Filing Proofs of Claim, Including Requests for Payment Under Section 503(b)(9), (II) Setting a Bar Date for the Filing of Proofs of Claim By Governmental Units, (III) Setting a Bar Date for the Filing of Requests for Allowance of Administrative Expense Claims, (IV) Establishing Amended Schedules Bar Date and Rejection Damages Bar Date, (V) Approving the Form of and Manner for Filing*

8

*Proofs of Claim, (VI) Approving Notice of Bar Dates, and (VII) Granting Related Relief* [Docket No. 152], which established the General Claims Bar Date and certain other deadlines and procedures.

17.     "<u>Beneficiaries</u>" means holders of Allowed Claims entitled to receive Distributions from the Liquidating Trust under the Plan, whether or not such Claims were Allowed on the Effective Date.

18.     "<u>Business Day</u>" means any day, other than a Saturday, Sunday or legal holiday as defined in Bankruptcy Rule 9006(a).

19.     "<u>Cash</u>" means cash and cash equivalents, including, but not limited to, bank deposits, wire transfers, checks, and readily marketable securities, instruments, and legal tender of the United States of America or instrumentalities thereof.

20.     "<u>Cash Collateral Order</u>" means, collectively, the Interim Cash Collateral Order and the Final Cash Collateral Order.

21.     "<u>Causes of Action</u>" means all claims, actions, causes of action, choses in action, suits, debts, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, variances, trespasses, damages, judgments, remedies, rights of setoff, third-party claims, subrogation claims, contribution claims, reimbursement claims, indemnity claims, counterclaims, and crossclaims, including, without limitation, all claims and any avoidance, preference, recovery, subordination or other actions of the Debtor (unless the context expressly states that such Causes of Action belong to the another Entity) against Creditors, insiders, and/or any other Entities under the Bankruptcy Code, based in

9

law or equity, including, without limitation, under the Bankruptcy Code, whether direct, indirect, derivative, or otherwise and whether asserted or unasserted as of the Effective Date.

22.     "Chapter 11 Cases" means the Chapter 11 cases commenced when the Debtors filed their voluntary petitions for relief under Chapter 11 of the Bankruptcy Code on the Petition Date, being jointly administered under the lead Case No. 20-11502 (KBO).

23.     "Claim" means a claim (as defined in Section 101(5) of the Bankruptcy Code) against the Debtors, including, but not limited to: (a) any right to payment from the Debtors whether or not such right is reduced to judgment, liquidated, unliquidated, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or (b) any right to an equitable remedy for breach of performance if such performance gives rise to a right of payment from the Debtors, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured.

24.     "Claimant" means the Holder of a Claim.

25.     "Claims Agent" means Stretto (the trade name of Bankruptcy Management Solutions, Inc. and its subsidiaries), which was appointed as the Debtors' claims, noticing, and balloting agent.

26.     "Claims Objection Deadline" means, with respect to all Claims other than Professional Fee Claims, (a) 240 days after the Effective Date, or (b) such other period as may be fixed by an order of the Bankruptcy Court for objecting to Claims upon request of the Liquidating Trustee.

27.     "Class" means a category of Holders of Claims or Equity Interests, as set forth in Article 3 of the Plan.

28.     "Committee" means the Official Committee of Unsecured Creditors appointed by the U.S. Trustee in the Chapter 11 Cases.

29.     "Confirmation" means the entry of the Confirmation Order, subject to all conditions specified in Article 7 of the Plan having been (a) satisfied or (b) waived pursuant to Article 7.

30.     "Confirmation Date" means the date upon which the Confirmation Order is entered by the Bankruptcy Court on its docket, within the meaning of Bankruptcy Rules 5003 and 9021.

31.     "Confirmation Order" means the order of the Bankruptcy Court confirming the Plan pursuant to Section 1129 of the Bankruptcy Code.

32.     "Consummation" or "Consummate" means the occurrence of the Effective Date.

33.     "Contingent Claim" means any Claim for which a Proof of Claim has been filed with the Bankruptcy Court but was not filed in a sum certain and which Claim has not been estimated, fixed, or liquidated by the Bankruptcy Court at a sum certain as of the Effective Date, or a Claim that has accrued but nonetheless remains dependent on the occurrence of a future event that may never occur.

34.     "Creditor" means any Holder of a Claim against the Debtors as specified in Section 101(10) of the Bankruptcy Code.

DOCS_LA:332027.1

35.     "Darden" means Darden Direct Distribution, Inc.

36.     "Darden Note" means that certain *Secured Promissory Note*, dated as of July 15, 2019, executed by the Darden Note Debtors in favor of Darden in the original aggregate principal amount of $10,000,000.

37.     "Darden Note Collateral" means (i) the ABL Collateral, in which Darden holds a third-priority security interest securing the Darden Note Debtors' obligations owed to Darden arising under the Darden Note, subject to the applicable Intercreditor Agreement(s) and related documents, and (ii) the Term Loan Collateral except for the Huron Campus Property, in which Darden holds a second-priority security interest securing the Darden Note Debtors' obligations owed to Darden arising under the Darden Note, subject to the applicable Intercreditor Agreement(s) and related documents.

38.     "Darden Note Debtors" means the Debtors other than MPFS-Maryland.

39.     "Darden Note Secured Claims" means any Secured Claim against any of the Debtors arising from or based upon the Darden Note.

40.     "Debt" means liability on a Claim.

41.     "Debtor Release" has the meaning set forth in Section VIII.E of the Plan.

42.     "Debtors" means Maines Paper and Food Service, Inc. and its debtor affiliates identified in note 1 of the Plan, debtors and debtors-in-possession in the Chapter 11 Cases.

43.     "Disallowed Claim" means (i) a Claim, or any portion thereof, that has been disallowed by a Final Order or by other agreement of a Claimant; (ii) a Claim that has been

listed in the Schedules at zero or as contingent, disputed, or unliquidated and as to which no Proof of Claim has been timely filed or deemed timely filed with the Bankruptcy Court pursuant to the Bankruptcy Code, a Final Order, or other applicable law; or (iii) a Claim that has not been listed in the Schedules and as to which no Proof of Claim has been timely filed or deemed timely filed with the Bankruptcy Court pursuant to the Bankruptcy Code, a Final Order, or other applicable law.

44.     "Disclosure Statement" means the *Disclosure Statement with Respect to Debtors' First Amended Joint Plan of Liquidation Pursuant to Chapter 11 of the Bankruptcy Code*, as amended, supplemented, or modified from time to time, describing the Plan, which was prepared and distributed in accordance with the Bankruptcy Code and Bankruptcy Rules and other applicable law.

45.     "Disputed" means, with respect to any Claim or Equity Interest, any Claim or Equity Interest: (a) listed on the Schedules as unliquidated, disputed, or contingent and as to which no Proof of Claim has been filed; or (b) as to which the Debtors, the Liquidating Trustee, or any other party in interest have interposed a timely objection or request for estimation in accordance with the Bankruptcy Code and the Bankruptcy Rules or is otherwise disputed by the Debtors or the Liquidating Trustee in accordance with applicable law, which objection, request for estimation or dispute has not been withdrawn or determined by a Final Order.

46.     "Disputed Claim" means: (i) any Claim or portion of a Claim as to which an objection to the allowance thereof has been interposed as of any deadline fixed under the Plan or by order of the Bankruptcy Court, which objection has not been withdrawn or determined by

Final Order; (ii) any Claim scheduled by the Debtors in the Schedules as disputed, contingent, or unliquidated and as to which no Proof of Claim has been timely filed; or (iii) a Claim that is not listed in the Schedules and as to which no Proof of Claim has been timely filed. To the extent an objection relates to the allowance of only a part of a Claim, such Claim shall be a Disputed Claim only to the extent of the objection.

47.     "Disputed Claim Reserve" has the meaning set forth in Section V.O of the Plan.

48.     "Distributions" means the distributions of Cash to be made in accordance with the Plan.

49.     "Distribution Dates" means collectively the Initial Distribution Date, any Subsequent Distribution(s) Date, and the date of the Final Distribution.

50.     "Distribution Record Date" means the close of business on the Business Day immediately preceding the Effective Date.

51.     "Effective Date" means the date selected by the Debtors which is a Business Day after the Confirmation Date on which: (a) no stay of the Confirmation Order is in effect, and (b) all conditions specified in Article 7 of the Plan have been satisfied, unless waived by the Debtors. Within five (5) business days after the Effective Date, notice of the Effective Date shall be filed with the Bankruptcy Court by the Liquidating Trustee.

52.     "Entity" means an entity as defined in Section 101(15) of the Bankruptcy Code and, where applicable, the Committee.

53. "Equity Interest" means any equity interest in the Debtors, including, but not limited to, all issued, unissued, authorized, or outstanding shares or stock, whether vested or non-vested, together with any warrants, options, or contract rights to purchase or acquire such interests at any time.

54. "Estates" means the respective estates of the Debtors in the Chapter 11 Cases created pursuant to Section 541 of the Bankruptcy Code upon the commencement of the Chapter 11 Cases.

55. "Exculpated Parties" has the meaning set forth in Section VIII.D of the Plan.

56. "Final Cash Collateral Order" means the *Final Order (A) Authorizing the Debtors to Use Cash Collateral, (B) Granting Limited Adequate Protection, and (C) Modifying the Automatic Stay* [Docket No. 163], entered by the Court in the Chapter 11 Cases.

57. "Final Decree" means the decree contemplated under Bankruptcy Rule 3022.

58. "Final Distribution" means the last payment to Holders of Allowed Claims in accordance with the provisions of the Plan.

59. "Final Order" means an order or judgment of the Bankruptcy Court or other court of competent jurisdiction: (i) that has not been reversed, stayed, modified, or amended; (ii) as to which the time to or the right to appeal or seek reconsideration, review, rehearing, or certiorari has expired or been waived (without regard to whether the time to seek

15

relief from a judgment under Bankruptcy Rule 9024 has expired); and (iii) as to which no appeal or petition for reconsideration, review, rehearing, or certiorari is pending.

60. "General Claims Bar Date" means August 21, 2020, at 5:00 p.m. Eastern Time, which is the general deadline set pursuant to the Bar Date Order for filing proofs of claim for any Claims against the Debtors that arose prior to the Petition Date.

61. "Governmental Unit" means the United States; State; Commonwealth, District, Territory, municipality, foreign state, department, agency, or instrumentality of the United States (but not a United States trustee while serving as a trustee in a case under Chapter 11), a State, a Commonwealth, a District, a Territory, a municipality, or a foreign state; or other foreign or domestic government.

62. "GUC Fund" means $2,000,000 in Cash, which Cash will be released from escrow, which escrow is to be funded by the ABL Agent within one (1) business day of the Confirmation Date, to the Liquidating Trust on the Effective Date, subject to all conditions for release set forth in the Strict Foreclosure Agreement, including, without limitation, the confirmation of an "Acceptable Plan" that includes a "Lineage Release" (as said terms are defined in the Strict Foreclosure Agreement and, with respect to the Lineage Release, as otherwise amended by this Plan). First, up to $250,000 of the GUC Fund will be used to fund the administration of the Liquidating Trust including prosecuting claims against the Maines Brothers and W&D Entities, which amount can be exceeded with consent from the Oversight Committee, and any remaining cash in the GUC Fund shall be used to make distributions on account of Allowed Unsecured Claims pursuant to the Plan and Liquidating Trust Agreement.

No such distributions shall be made to (i) Lineage on account of any of its Allowed Claims against the Debtors, (ii) on account of any secured claim, or (iii) on account of any unsecured deficiency Claims of the Term Loan Agent, the Term Loan Lenders and/or Darden if and to the extent prohibited under the applicable Intercreditor Agreements. The GUC Fund will be held and administered by the Liquidating Trustee.

63. "Holder" means an Entity holding a Claim or Equity Interest.

64. "Huron Campus Property" means the approximately 3.5 million square foot industrial campus located at 1701 North Street, Endicott, NY 13760, owned by Huron Real Estate Associates.

65. "Huron Real Estate Associates" means Huron Real Estate Associates, LLC, a non-Debtor affiliate of the Debtors.

66. "Impaired" means with respect to a Claim or Class of Claims, a Claim or Class of Claims that is impaired within the meaning of Section 1124 of the Bankruptcy Code.

67. "Indemnified Parties" has the meaning set forth in Section VIII.G of the Plan.

68. "Initial Distribution Date" means the Effective Date, or as soon as practicable thereafter when the initial distribution shall be made to the Holders of Allowed Claims, as determined by the Liquidating Trustee in its reasonable discretion.

69. "Insider" means an insider of the Debtors, as defined in Section 101(31) of the Bankruptcy Code.

70.     "Insurance Policies" means all insurance policies maintained by the Debtors as of the Petition Date, including but not limited to director and officer insurance policies.

71.     "Interim Cash Collateral Order" means the *Interim Order (A) Authorizing the Debtors to Use Cash Collateral, (B) Granting Limited Adequate Protection, (C) Modifying the Automatic Stay, and (D) Scheduling a Final Hearing* [Docket No. 48], entered by the Court in the Chapter 11 Cases.

72.     "Intercompany Claim" means any Claim held by a Debtor against another Debtor.

73.     "Intercreditor Agreement(s)" means, as applicable, (i) that certain *Amended and Restated Intercreditor Agreement*, dated as of April 23, 2020, by and between the ABL Agent, as senior agent, and the Term Loan Agent, as subordinated agent, as amended, supplemented, or otherwise modified from time to time; (ii) that certain *Subordination Agreement*, dated as of July 15, 2019, by and between the ABL Agent, the Term Loan Agent, and Darden, as subordinated lender, as amended, supplemented, or otherwise modified from time to time; and (iii) any other intercreditor agreement between the ABL Agent, the Term Loan Agent, and/or Darden relating to any of the Debtors' obligations and/or assets.

74.     "Interim Fee Order" means any Order (if any) that may be entered by the Court establishing certain procedures for the interim compensation and reimbursement of expenses of Professionals in the Chapter 11 Cases.

75.     "Lien" means any charge against or interest in property (including, but not limited to, any mortgage, lien, pledge, charge, security interest, encumbrance, or other security device of any kind) to secure payment of a debt or performance of an obligation.

76.     "Lineage" means, collectively, Lineage Bluebird Debtco, LLC and its affiliates.

77.     "Liquidation Proceeds" means any Cash or other consideration paid to or realized by the Debtors or the Liquidating Trustee, as applicable, upon the sale, transfer, assignment, or other disposition of the Liquidating Trust Assets.

78.     "Liquidating Trust" means the grantor trust to be created upon the Effective Date for the benefit of the Beneficiaries.

79.      "Liquidating Trust Agreement" means the agreement, substantially in the form included in the Plan Supplement governing the Liquidating Trust, as it may be subsequently modified from time to time.

80.     "Liquidating Trust Assets" means the assets held in the Liquidating Trust comprised of (i) Available Cash; (ii) the GUC Fund; (iii) all Causes of Action the Debtors hold or may hold against any Entity not otherwise released or waived pursuant to the Plan; (iv) all Claims and rights of the Debtors under any Insurance Policies; (v) any and all other assets, interests, rights, claims and defenses of the Debtors or Estates, including, without limitation, all rights under any order of the Bankruptcy Court; and (vi) any and all proceeds of any of the foregoing.  For the avoidance of doubt, the GUC Fund will be held and administered by the

Liquidating Trustee pursuant to the Plan, but the GUC Fund does not constitute Available Cash or property of the Estates.

81.     "<u>Liquidating Trust Assets Account</u>" means an interest-bearing bank account or money-market account to be established and held in trust by the Liquidating Trustee on or after the Effective Date for the purpose of holding the Liquidating Trust Assets and any proceeds thereof to be distributed under the Plan and any interest, dividends, or other income earned upon the investment of the Liquidating Trust Assets.  The Liquidating Trust Assets Account will be initially funded by the remaining cash in the Estate (subject to any applicable conditions and requirements of the Cash Collateral Order and the Strict Foreclosure Agreement), and the GUC Fund.  .

82.     "<u>Liquidating Trust Interests</u>" means the non-transferable interests in the Liquidating Trust, distributions of which will be made to the Beneficiaries of the Liquidating Trust.

83.     "<u>Liquidating Trustee</u>" means the Person appointed by the Committee to act as trustee of the Liquidating Trust in accordance with the terms of the Plan, the Confirmation Order, and the Liquidating Trust Agreement, or such successor appointed as the trustee in accordance with the Liquidating Trust Agreement.

84.     "<u>Litigation</u>" means the interest of the Estates, the Debtors, or the Liquidating Trust, as applicable, in any and all claims, rights, and Causes of Action that have been or may be commenced by the Debtors or the Liquidating Trust, as applicable, except to the extent concerning any Released Parties.  Litigation includes, without limitation not otherwise

stated herein, any action: (i) against the Maines Brothers and any Related Persons thereof (other than the Debtors) and the W&D Entities and any affiliates thereof (other than the Debtors); (ii) to avoid and recover any transfers of property determined to be preferential, fraudulent, or avoidable pursuant to Sections 544, 545, 547, 548, 549(a), and 550 of the Bankruptcy Code; (iii) for the turnover of property to the Debtors or the Liquidating Trust, as applicable; (iv) for the recovery of property or payment of money that belongs to or can be asserted by the Debtors or the Liquidating Trust, as applicable; (iv) for compensation for damages incurred by the Debtors; and (v) equitable subordination actions against Creditors.

85. "Litigation Recovery" means any Cash or other property received by the Debtors or the Liquidating Trust, as applicable, from all or any portion of the Litigation, including, but not limited to, awards of damages, attorneys' fees and expenses, interest, and punitive damages, whether recovered by way of settlement, execution on judgment, or otherwise. If any Litigation is pursued on a contingent-fee basis, the Litigation Recovery will be net of any contingent fee paid to legal counsel.

86. "Maines Brothers" means, collectively, David Maines, William Maines, and any relative of David or William Maines as defined in section 101(45) of the Bankruptcy Code.

87. "MPFS-Maryland" means Maines Paper & Food Service – Maryland, Inc., a Debtor in the Chapter 11 Cases.

87. "Oversight Committee" means a creditors' oversight committee consisting of three (3) members selected by the Committee.

21

88.     "Person" means any individual, corporation, limited liability company, general partnership, association, joint stock company, joint venture, estate, trust, unincorporated organization, Governmental Unit, or other Entity.

89.     "Petition Date" means June 10, 2020, the date on which the Debtors filed their respective voluntary petitions for relief commencing the Chapter 11 Cases.

90.     "Plan" means this Joint Plan of Liquidation, either in its present form or as it may be altered, amended, modified, or supplemented from time to time in accordance with the Plan, the Bankruptcy Code, and the Bankruptcy Rules, including, without limitation, any exhibits and schedules hereto, either in its present form or as the same may be amended, modified, or supplemented from time to time in accordance with the terms and provisions hereof.

91.     "Plan Documents" means the Plan, the Disclosure Statement, the Plan Supplement, Liquidating Trust Agreement, any plan support letters, or other documents or pleadings filed by the Debtors relating to the Plan.

92.     "Plan Objection Deadline" means the deadline established by the Bankruptcy Court for filing and serving objections to Confirmation of the Plan.

93.     "Plan Supplement" means the pleading or pleadings identified in the Plan or Disclosure Statement for filing with the Bankruptcy Court not later than seven calendar days prior to the Plan Objection Deadline, which shall include certain exhibits and schedules to this Plan, as well as documents, agreements, and instruments evidencing and effectuating the Plan.

94.     "Preference Claim Waiver" means a waiver of the right of the Debtors and their Estates to prosecute or assert offensively or defensively any claims pursuant to section 547

(and section 548 to the extent arising under the same facts as section 547) of the Bankruptcy Code or any state law equivalent claims for "preferences" against the holders of Allowed General Unsecured Claims. For the avoidance of doubt, Causes of Action arising under section 542, section 548, and section 549 of the Bankruptcy Code, along with any equivalent state law causes of action, shall become property of the Liquidating Trust and are not waived.

95. "Prepetition Strict Foreclosure" means the strict foreclosure and related transactions implemented by the ABL Agent pursuant to the Strict Foreclosure Agreement, as a result of or in connection with, the ABL Agent, *inter alia*, accepted certain of the ABL Collateral in partial satisfaction of the ABL Claims and consented to the Debtors' use of cash collateral on the terms set forth in the Strict Foreclosure Agreement and the Cash Collateral Order(s).

96. "Priority Non-Tax Claim" means any Claim, other than an Administrative Claim or a Priority Tax Claim, to the extent entitled to priority under Section 507(a) of the Bankruptcy Code.

97. "Priority Tax Claim" means a Claim of a Governmental Unit of the kind specified in Sections 502(i) and 507(a)(8) of the Bankruptcy Code.

98. "Pro Rata" means proportionately so that, with respect to a Claim, the ratio of: (a) (i) the amount of property distributed on account of a particular Claim to (ii) the Allowed amount of the Claim, is the same as the ratio of (b) (i) the amount of property distributed on account of all Allowed Claims in the Class or Classes entitled to share in the applicable distribution to (ii) the amount of all Allowed Claims in such Class or Classes.

23

99.    "Professional" means an Entity:  (a) employed pursuant to a Final Order in accordance with Sections 327 and 1103 of the Bankruptcy Code and to be compensated for services rendered prior to the Effective Date, pursuant to Sections 327, 328, 329, 330, and 331 of the Bankruptcy Code, or (b) for which compensation and reimbursement has been allowed by the Bankruptcy Court pursuant to Section 503(b)(4) of the Bankruptcy Code.

100.    "Professional Fee Claim" means those fees and expenses claimed by Professionals pursuant to Sections 330, 331, or 503 of the Bankruptcy Code, and accrued and unpaid as of the Effective Date.

101.    "Proof of Claim" means a proof of claim filed pursuant to Section 501 of the Bankruptcy Code or any order of the Bankruptcy Court, together with supporting documents.

102.    "Record Date" has the meaning set forth in Section X.M of the Plan.

103.    "Rejection Bar Date" means the last date for any Entity whose claims arise out of the Bankruptcy Court approved rejection of an executory contract or unexpired lease to file a proof of claim for damages related to such rejection.  The Rejection Bar Date for such Claims will be, (i) with respect to executory contracts and unexpired leases rejected pursuant to a Court order other than the Confirmation Order, the date provided by an order approving the rejection, and, (ii) with respect to executory contracts and unexpired leases rejected pursuant to the Confirmation Order, the date that is thirty (30) days after the Effective Date.

104.    "Related Persons" means, subject to any exclusions expressly set forth in the Plan, with respect to a specific Person, said Person's successors and assigns, and as applicable, its current and former shareholders, affiliates, subsidiaries, employees, agents,

24

officers, directors, managers, trustees, partners, members, professionals, representatives, advisors, attorneys, financial advisors, accountants, and consultants.

105. "<u>Released Parties</u>" means, collectively, (a) the Debtors; (b) the Committee and the individual members thereof in their capacity as such; (c) Lineage, subject to the release of the GUC Fund to the Liquidating Trust; and (d) each of such Entities' Related Persons. For the avoidance of doubt, the Released Parties include the Debtors' Chief Restructuring Officer and independent director on the Board of Directors of each of the Debtors, as Related Persons of the Debtors (the foregoing category (d)). The Released Parties do not include the Maines Brothers or any W&D Entity.

106. "<u>Releasing Parties</u>" has the meaning set forth in Section VIII.E.2 of the Plan.

107. "<u>Schedules</u>" means the schedules of assets and liabilities as the Bankruptcy Court required the Debtors to file pursuant to Section 521 of the Bankruptcy Code, the Official Bankruptcy Forms, and the Bankruptcy Rules, as they may be amended and supplemented from time to time, and the Debtors' statements of financial affairs filed with the Bankruptcy Court, as the Bankruptcy Court required the Debtors to file pursuant to Section 521 of the Bankruptcy Code, the Official Bankruptcy Forms, and the Bankruptcy Rules, as they may be amended and supplemented from time to time.

108. "<u>Secured Claim</u>" means any Claim that is secured in whole or part, as of the Petition Date, by a Lien which is valid, perfected, and enforceable under applicable law and is not subject to avoidance under the Bankruptcy Code or applicable non-bankruptcy law, or

subject to setoff under Section 553 of the Bankruptcy Code, to the extent of the value of such Lien or right of setoff as determined under Sections 506(a) or 1129(b) of the Bankruptcy Code, as applicable.

109. "Strict Foreclosure Agreement" means that certain *Strict Foreclosure, Deed in Lieu and Settlement Agreement*, dated as of May 17, 2020, by and among the Debtors, the ABL Agent, Darden, and certain related parties, as amended, supplemented or otherwise modified from time to time.

110. "Subsequent Distribution Date" means any date after the Initial Distribution Date upon which the Liquidating Trust makes a distribution to any Holders of Allowed Administrative, Secured, Priority, or Unsecured Claims.

111. "Tax" means any tax, charge, fee, levy, impost, or other assessment by any federal, state, local, or foreign taxing authority, including, without limitation, income, excise, property, sales, transfer, employment, payroll, franchise, profits, license, use, *ad valorem*, estimated, severance, stamp, occupation, and withholding tax. "Tax" shall include any interest or additions attributable to, imposed on, or with respect to such assessments.

112. "Tax Claim" means all or that portion of an Allowed Claim held by a Governmental Unit for a Tax assessed or assessable against the Debtors.

113. "Term Loan Agent" means PNC Bank, National Association, and any successor thereto, solely in its capacity as agent for the Term Loan Lenders under the Term Loan Agreement.

114. "Term Loan Agreement" means that certain *Term Loan and Security*

*Agreement*, dated as of January 15, 2019, by and among Huron Real Estate Associates, as borrower, the Term Loan Agent, and the Term Loan Lenders, as amended, supplemented, or otherwise modified from time to time.

115. "Term Loan Guarantee Claims" means any Claims against any of the Debtors other than MPFS – Maryland on the basis of any guarantees and/or similar agreements by the Debtors to satisfy the obligations of Huron Real Estate Associates arising from or based upon the Term Loan Agreement.

116. "Term Loan Collateral" means (i) the "Collateral" as defined in the Term Loan Agreement, in which the Term Loan Agent holds a first-priority security interest securing Huron Real Estate Associates' obligations under the Term Loan Agreement, subject to the Term Loan Agreement, the applicable Intercreditor Agreement(s), and related documents, and (ii) the ABL Collateral, in which the Term Loan Agent holds a second-priority security interest securing Huron Real Estate Associates' obligations under the Term Loan Agreement, subject to the Term Loan Agreement, the applicable Intercreditor Agreement(s), and related documents.

117. "Term Loan Lenders" means the lenders under the Term Loan Agreement from time to time.

118. "Third Party Release" has the meaning set forth in Section VIII.E.2 of the Plan.

119. "Unimpaired Claim" means an unimpaired Claim within the meaning of Section 1124 of the Bankruptcy Code.

DOCS_LA:332027.1

120.    "<u>Unsecured Claim</u>" means any Claim against the Debtors or Estates that is not an ABL Secured Claim, a Darden Note Secured Claim, a Term Loan Guarantee Claim, an Administrative Claim, a Priority Tax Claim, a Priority Non-Tax Claim, or an Intercompany Claim.

121.    "<u>U. S. Trustee</u>" means the Office of the United States Trustee for the District of Delaware.

122.    "<u>Voting Instructions</u>" means the instructions for voting on the Plan contained in Article 1 of the Disclosure Statement and in the Ballots.

123.    "<u>Voting Record Date</u>" means the date as of which the identity of Holders of Claims is set for purposes of determining the Entities entitled to receive and vote on the Plan.

124.    "<u>W&D Entity</u>" means any entity other than the Debtors owned, managed, or controlled by the Maines Brothers.  For the avoidance of doubt,  the W&D Entities include, but are not limited to, MTAC, LLC, Maple Lane Holdings, LLC, W&D Arlington, LLC, W&D Oakland, LLC, W&D Leasing, LLC, Maines Family Limited Partnership, Maines Food & Party Warehouse, Inc., and Broome County Cold Storage, Inc.

**II.**

**<u>UNCLASSIFIED ADMINISTRATIVE CLAIMS, PROFESSIONAL FEES,</u>**

**<u>AND PRIORITY TAX CLAIMS</u>**

**A.    <u>Introduction</u>**

Certain types of Claims are not placed into voting Classes; instead they are unclassified. They are not considered Impaired and they do not vote on the Plan because they are

28

automatically entitled to the specific treatment provided for them in the Bankruptcy Code. As such, the Debtors have not placed the following Claims in a Class:

**B.** **Administrative Claims**

Except to the extent that a Holder of an Allowed Administrative Claim agrees to a less favorable treatment, each Holder of an Allowed Administrative Claim, other than a Professional Fee Claim, shall receive from Available Cash, without interest, Cash equal to the Allowed amount of such Claim: (a) on or as soon as practicable after the later of (i) the Effective Date, or (ii) the date upon which the Bankruptcy Court enters a Final Order determining or approving such Claim; (b) in accordance with the terms and conditions of agreements between the Holder of such Claim and the Debtors or the Liquidating Trustee, as the case may be; (c) with respect to any Administrative Claims representing obligations incurred in the ordinary course of the Debtors' business, upon such regular and customary payment or performance terms as may exist in the ordinary course of the Debtors' business or as otherwise provided in the Plan; or (d) with respect to statutory fees due pursuant to 28 U.S.C. § 1930(a)(6), as and when due under applicable law.

Holders of Administrative Claims (including, without limitation, Professionals requesting compensation or reimbursement of such expenses pursuant to Sections 327, 328, 330, 331, 503(b), or 1103 of the Bankruptcy Code) that do not file such requests by the applicable deadline provided for herein may be subject to objection for untimeliness and may be prohibited by order of the Bankruptcy Court from asserting such claims against the Debtors, the Estates, the Liquidating Trust, or their successors or assigns, or their property. Any objection to Professional

29

Fee Claims shall be filed on or before the objection deadline specified in the application for final compensation or order of the Bankruptcy Court.

All fees due and payable under 28 U.S.C. § 1930 that have not been paid shall be paid on or before the Effective Date.

**C.**     **Professional Fee Claims**

Professionals requesting compensation or reimbursement of expenses pursuant to Sections 327, 328, 330, 331, 503(b), or 1103 of the Bankruptcy Code or required to file fee applications by order of the Bankruptcy Court for services rendered prior to the Effective Date must file and serve pursuant to the notice provisions of the Interim Fee Order, an application for final allowance of compensation and reimbursement of expenses no later than sixty (60) days after the Effective Date. All such applications for final allowance of compensation and reimbursement of expenses will be subject to the authorization and approval of the Bankruptcy Court. For avoidance of doubt, the Liquidating Trustee is not authorized under the Plan to object to applications for final allowance of compensation and reimbursement of expenses.

Upon approval of the fee applications by the Bankruptcy Court, the Liquidating Trustee shall pay Professionals all of their respective accrued and Allowed fees and reimbursement of expenses arising prior to the Effective Date, plus reasonable fees for services rendered, and actual and necessary costs incurred, in connection with the filing, service and prosecution of any applications for allowance of Professional Fees pending on the Effective Date or filed and/or served after the Effective Date, plus post-Effective Date fees approved by the Liquidating Trustee.

**D.** **Priority Tax Claims**

Except to the extent that a Holder of an Allowed Priority Tax Claim agrees to a less favorable treatment, in exchange for full and final satisfaction, settlement, release and discharge of each Allowed Priority Tax Claim, the Liquidating Trust shall pay each holder of an Allowed Priority Tax Claim, from Available Cash, the full unpaid amount of such Allowed Priority Tax Claim on the earliest of the following dates: (i) on or as soon as practicable after the Effective Date, (ii) on or as soon as practicable after the date such Allowed Priority Tax Claim becomes an Allowed Claim, and (iii) the date such Allowed Priority Tax Claim is payable under applicable non-bankruptcy law.

III.

CLASSIFICATION AND TREATMENT OF

CLASSIFIED CLAIMS AND EQUITY INTERESTS

**A.** **Summary**

The Plan constitutes a separate plan proposed by each Debtor within the meaning of Section 1121 of the Bankruptcy Code; provided that the Debtors shall consolidate Allowed Claims into one Estate for purposes of distributions to Creditors. Except for the Claims addressed in Article II of the Plan, all Claims and Equity Interests are classified in the Classes set forth below for all purposes, including for voting, Confirmation, and distributions pursuant to the Plan, all in accordance with Sections 1122 and 1123(a)(1) of the Bankruptcy Code. A Claim or Equity Interest shall be deemed classified in a particular Class only to the extent that the Claim or Equity Interest qualifies within the description of that Class and shall be deemed classified in

31

a different Class to the extent that any remainder of such Claim or Equity Interest qualifies within the description of such different Class. A Claim or Equity Interest is in a particular Class only to the extent that such Claim or Equity Interest is Allowed in that Class and has not been paid or otherwise settled prior to the Effective Date.

**B.** **Classification and Treatment of Claims Against the Debtors**

The classification of Claims and Equity Interests against the Debtors pursuant to the Plan is as follows:

| Class | Status | Voting Rights |
|---|---|---|
| Class 1 – Priority Non-Tax Claims | Unimpaired | Not Entitled to Vote |
| Class 2 – ABL Secured Claims | Impaired | Entitled to Vote |
| Class 3 – Darden Note Secured Claims | Impaired | Not Entitled to Vote; Holder Deemed to Vote for the Plan |
| Class 4 – Term Loan Guarantee Claims | Impaired | Not Entitled to Vote; Holder Deemed to Vote for the Plan |
| Class 5 – Other Secured Claims | Unimpaired | Not Entitled to Vote |
| Class 6 – Unsecured Claims | Impaired | Entitled to Vote |
| Class 7 – Intercompany Claims | Impaired | Not Entitled to Vote; Holders Consent to and Vote for the Plan |
| Class 8 – Equity Interests | Impaired | Not Entitled to Vote; Deemed to Reject Plan |

1. Class 1 – Priority Non-Tax Claims

    a. **Classification:** Class 1 consists of Priority Non-Tax Claims.

    b. **Treatment:** The Liquidating Trustee shall pay, from Available Cash, the Allowed amount of each Priority Non-Tax Claim to each Entity holding a Priority Non-Tax Claim as soon as practicable following the later of: (a) the Effective Date and (b) the date such Priority Non-Tax Claim becomes an Allowed Claim (or as otherwise permitted by

law).  The Liquidating Trustee shall pay each Entity holding a Priority Non-Tax Claim in Cash

in full in respect of such Allowed Claim without interest from the Petition Date; *provided,*

*however*, that such Entity may be treated on such less favorable terms as may be agreed to in

writing by such Entity.

        **c.**      **Voting:**  Class 1 is not an Impaired Class and Holders of Priority

Non-Tax Claims are not entitled to vote on the Plan.

        2.      <u>Class 2 – ABL Secured Claims</u>

        **a.**      **Classification:**  Class 2 consists of the ABL Secured Claims.

        **b.**      **Treatment:**  The Holder of the ABL Secured Claims shall retain

its Lien on the ABL Collateral until such collateral is disposed of or released in accordance with

the Strict Foreclosure Agreement, the Cash Collateral Orders, and the Plan.  For the avoidance of

doubt, all Available Cash, which expressly excludes the GUC Fund, shall be used by the Debtors

to pay Allowed Administrative Claims and make distributions to the Debtors' Creditors other

than the Holder of the ABL Secured Claims, in accordance with the Strict Foreclosure

Agreement, the Cash Collateral Orders, and the Plan.

        **c.**      **Voting:**  Class 2 is an Impaired Class, and the Holder of the ABL

Secured Claims is entitled to vote on the Plan.

        3.      <u>Class 3 – Darden Note Secured Claims</u>

        **a.**      **Classification:**  Class 3 consists of the Darden Note Secured

Claims.

  **b.**  **Treatment:** The Holder of the Darden Note Secured Claims shall receive no distribution under the Plan on account of its Class 3 Claim.  Any Allowed unsecured deficiency claim of Darden relating to the Darden Note shall be classified and treated as an Unsecured Claim in Class 8.

  **c.**  **Voting:** Class 3 is an Impaired Class.  However, the Holder of the Class 3 Claim is deemed to vote for the Plan pursuant to the applicable Intercreditor Agreement(s) and related documents.

  4.  Class 4 – Term Loan Guarantee Claims

  **a.**  **Classification:** Class 4 consists of the Term Loan Guarantee Claims.

  **b.**  **Treatment:** The Holder of the Term Loan Guarantee Claims shall receive no distribution under the Plan on account of its Class 4 Claims; *provided that* nothing herein or in the Plan is intended by the Debtors to, nor shall, affect, modify or release non-Debtor Huron Real Estate Associates' obligations owed to the Holder of the Term Loan Guarantee Claims arising under the Term Loan Agreement.

  **c.**  **Voting:** Class 4 is an Impaired Class.  However, the Holder of the Class 4 Claims is deemed to vote for the Plan pursuant to the applicable Intercreditor Agreement(s) and related documents.

  5.  Class 5 – Other Secured Claims

  **a.**  **Classification:** Class 5 consists of Other Secured Claims.  For purposes of distributions under the Plan, each Holder of an Other Secured Claim in Class 5 is

considered to be in its own separate subclass within Class 5 (*i.e.*, Class 5A, Class 5B, *etc.*), and each such subclass is deemed to be a separate Class for purposes of the Plan.

**b.** **Treatment:** Except to the extent previously paid in full, to the extent any Other Secured Claims exist, at the option of the Debtors or the Liquidating Trustee, as applicable, one of the following treatments shall be provided: (i) the Holder of such Claim shall retain its Lien on its collateral until such collateral is sold, and the proceeds of such sale, less costs and expenses of disposing of such collateral, shall be paid to such Holder in full satisfaction and release of such Allowed Other Secured Claim; (ii) on or as soon as practicable after the later of (a) the Effective Date, or (b) the date upon which the Bankruptcy Court enters a Final Order determining or allowing such Claim, or as otherwise agreed between the Holder of such Claim and the Debtors or the Liquidating Trustee, as applicable, the Holder of such Other Secured Claim will receive a Cash payment equal to the amount of its Allowed Other Secured Claim in full satisfaction and release of such Other Secured Claim; or (iii) the collateral securing the Creditor's Other Secured Claim shall be abandoned to such Creditor, in full satisfaction, release, and discharge of such Other Secured Claim.

**c.** **Voting:** Class 5 is not an Impaired Class, and Holders of Other Secured Claims are not entitled to vote on the Plan.

6.  <u>Class 6 – Unsecured Claims</u>

**a.** **Classification:** Class 6 consists of Unsecured Claims. Class 6 includes any unsecured deficiency Claims of Lineage, Darden, the Term Loan Agent and/or the Term Loan Lenders.

**b.** **Treatment:** Each Holder of an Allowed Unsecured Claim in Class 6 shall receive (i) a Pro Rata share of the Liquidating Trust Interests in exchange for their Allowed Claims following the payment or reserve for Administrative Claims, Priority Tax Claims, Priority Non-Tax Claims, and Other Secured Claims and (ii) the Preference Claim Waiver. Pursuant to Section V.H. of the Plan, the $2,000,000 GUC Fund will be released to the Liquidating Trustee for administration in accordance with the Plan, the Liquidating Trust Agreement, and the Confirmation Order. Unsecured Claims are subject to all statutory, equitable, and contractual subordination claims, rights, and grounds available to the Debtors, the Estates, and pursuant to this Plan, the Liquidating Trustee, which subordination claims, rights, and grounds (including, without limitation, any such claims, rights, and grounds set forth in the Intercreditor Agreements) are fully enforceable prior to, on, and after the Effective Date.

Notwithstanding the foregoing or any other provision of the Plan, no distributions from the GUC Fund shall be made to (i) Lineage on account of any of its Allowed Claims against the Debtors or (ii) on account of any unsecured deficiency Claims of the Term Loan Agent, the Term Loan Lenders and/or Darden if and to the extent prohibited under the applicable Intercreditor Agreements.

**c.** **Voting:** Class 6 is an Impaired Class, and Holders of Class 6 Claims are entitled to vote to accept or reject the Plan; *provided, however*, the Term Loan Agent, the Term Loan Lenders and Darden, on account of their respective Class 6 Claims, are deemed to vote for the Plan pursuant to the applicable Intercreditor Agreement(s) and related documents.

DOCS_LA:332027.1

7. <u>Class 7 – Intercompany Claims</u>

   **a.** **Classification:** Class 7 consists of Intercompany Claims.

   **b.** **Treatment:** The Holders of Intercompany Claims shall receive no distribution under the Plan on account of their respective Class 7 Claims.

   **c.** **Voting:** Class 7 is an Impaired Class. However, the Holders of the Class 7 Claims consent to the foregoing Plan treatment, vote for the Plan, and waive any objection to the Confirmation of the Plan.

8. <u>Class 8 – Equity Interests</u>

   **a.** **Classification:** Class 8 consists of all Equity Interests in the Debtors.

   **b.** **Treatment:** There shall be no Distribution on account of Class 8 Equity Interests. Upon the Effective Date, all Equity Interests will be deemed cancelled and will cease to exist.

   **c.** **Voting:** Holders of Equity Interests are deemed to have rejected the Plan, and are not entitled to vote.

## IV.

## <u>ACCEPTANCE OR REJECTION OF THE PLAN</u>

**A.** **<u>Voting Classes</u>**

Each Holder of an Allowed Claim in Class 6 (Unsecured Claims) is entitled to vote either to accept or to reject the Plan. Only those votes cast by Holders of Allowed Claims shall be counted in determining whether acceptances have been received sufficient in number and amount

DOCS_LA:332027.1

to obtain Confirmation. Class 6 shall have accepted the Plan if: (a) the Holders (other than any Holder designated under Section 1126(e) of the Bankruptcy Code) of at least two-thirds in amount of the Allowed Claims actually voting in such Class have voted to accept the Plan, and (b) the Holders (other than any Holder designated under Section 1126(e) of the Bankruptcy Code) of more than one-half in number of the Allowed Claims actually voting in such Class have voted to accept the Plan.

Pursuant to the applicable Intercreditor Agreements, the Holders of Claims in Class 3 (Darden Note Secured Claims) and Class 4 (Term Loan Guarantee Claims), which are Impaired under the Plan, are deemed to vote for the Plan, without need for any cast ballots or other action or notice. Further, the Term Loan Agent, the Term Loan Lenders and Darden, on account of their respective Class 6 Claims, are deemed to vote for the Plan pursuant to the applicable Intercreditor Agreements and related documents.

While the Holders of the Claims in Class 7 (Intercompany Claims) are Impaired under the Plan, the Holders of said Claims consent to the applicable Plan treatment and vote for the Plan, without need for any cast ballots or other action or notice.

**B.** **Presumed Acceptance of Plan**

The Holders of Claims in Class 1 (Priority Non-Tax Claims), Class 2 (ABL Secured Claims) and Class 5 (Other Secured Claims) are unimpaired under the Plan and are therefore deemed to accept the Plan.

**C. Presumed Rejection of Plan**

The Holders of Class 8 Equity Interests shall not receive any distributions under the Plan, and are therefore deemed to reject the Plan and are not entitled to vote.

**D. Nonconsensual Confirmation**

If and to the extent applicable, the Debtors will request the Bankruptcy Court to confirm the Plan in accordance with Section 1129(b) of the Bankruptcy Code. Without limiting the foregoing, in the event that any Class of Claims entitled to vote on the Plan fails to accept the Plan as required by Section 1129(a) of the Bankruptcy Code, the Plan may be amended and, in any event, as applicable, the Debtors reserve the right to seek confirmation of the Plan over such rejection pursuant to Section 1129(b) of the Bankruptcy Code.

**V.**

**MEANS FOR IMPLEMENTATION OF THE PLAN**

**A. No Substantive Consolidation**

The Plan is being proposed as a joint plan of reorganization of the Debtors for administrative purposes only, and constitutes a separate chapter 11 plan for each Debtor. The Plan is not premised upon the substantive consolidation of the Debtors with respect to the Classes of Claims or Equity Interests set forth in the Plan; *provided that* the Debtors shall consolidate Allowed Claims into one Estate for purposes of voting on and distributions under the Plan.

**B. Dissolution of Debtors**

From and after the Effective Date, the Debtors shall be dissolved, without any further

action required on the part of the Debtors or the Debtor's officers, directors, interestholders, and/or any other parties; provided, however, the Liquidating Trustee in his or her discretion shall be authorized to take any and all actions necessary or desirable in relation to dissolution of the Debtors. On the Effective Date, the employment, retention, appointment and authority of all officers, directors, employees and professionals of the Debtors shall be deemed to terminate.

## C.     The Oversight Committee

The Oversight Committee's membership shall consist of three (3) Persons appointed by the Committee no later than ten (10) calendar days prior to the Voting Deadline. On or before the Effective Date, the Debtors shall file in the Chapter 11 Cases a notice identifying the initial members of the Oversight Committee, and stating that any party may obtain a copy of such notice by visiting http://cases.stretto.com/Maines/court-docket/.

The Oversight Committee shall continue in existence until such time as the Liquidation Trust is terminated or its member(s) unanimously elect to cause the Oversight Committee's dissolution. Upon the death or resignation of a member of the Oversight Committee, the remaining members of the Oversight Committee may fill the applicable vacancy on the Oversight Committee. If all members of the Oversight Committee resign or are otherwise unwilling to remain on the Oversight Committee, the Oversight Committee shall be deemed dissolved.

The Oversight Committee shall represent the interests of Holders of Allowed  Unsecured Claims during the existence of the Liquidation Trust and shall have the obligation to undertake in

good faith each of the acts and responsibilities set forth for the Oversight Committee in this Plan to:

(a) Terminate by unanimous vote the Liquidation Trustee for cause or upon resignation, death, incapacity or removal of the Liquidation Trustee and appoint a successor Liquidation Trustee; *provided*, that the Oversight Committee shall file with the Bankruptcy Court a notice of the appointment of such successor;

(b) Approve the sale of any remaining assets in the Debtors' Estates;

(c) Receive and review any report detailing the means by which the Liquidation Trustee invests and/or insures the remaining assets pending final Distribution; and

(d) Approve any and all actions of the Liquidation Trustee, as detailed in the Liquidating Trust Agreement.

The Oversight Committee shall create such by-laws (if any) as it deems necessary or convenient.

After the Effective Date, and until the Oversight Committee is dissolved and discharged, the Liquidating Trustee shall report to the Oversight Committee as to the status of all Distributions, material litigation, investment/insurance of the remaining assets in the Debtors' Estates, Claims objections, and all other material matters affecting the Allowed Unsecured Claims. The Liquidation Trustee shall also host a monthly call with the Oversight Committee.

The Liquidation Trustee shall consult with and seek reasonable consent of the Oversight Committee (such consent not to be unreasonably withheld) regarding any of the following:

DOCS_LA:332027.1

      (i)      The filing or commencement of any Causes of Action (other than objections to Claims or Interests) to the extent not commenced prior to the Effective Date;

      (ii)     The settlement or resolution of any Claims or Causes of Action to the extent that the Liquidating Trustee proposes a settlement (including providing for an allowed claim) in the amount of $100,000 and above; and

      (iii)    The retention and compensation of professionals.

Members of the Oversight Committee shall receive no compensation from the Debtors, the Liquidating Trust, or the Liquidating Trustee on account of their membership on the Oversight Committee except for the reimbursement of their reasonable out of pocket expenses (which, for the avoidance of doubt, shall not include the fees or expenses of any professionals retained individually or independently by any member of the Oversight Committee).

**D.**     **Appointment of the Liquidating Trustee**

The Committee will select the Liquidating Trustee to be appointed prior to the filing of the Plan Supplement and the identity of the Liquidating Trustee will be disclosed in the Plan Supplement. From and after the Effective Date, professionals may be retained by the Liquidating Trustee, with consent of the Oversight Committee as set forth in the Liquidating Trust Agreement, without further need for documentation or Bankruptcy Court approval. All fees and expenses incurred by the professionals retained by the Liquidating Trustee following the Effective Date shall be paid by the Liquidating Trust from the Liquidating Trust Assets (after

payment in full of all Allowed Administrative Claims) in accordance with the Liquidating Trust Agreement.

**E.**     **The Liquidating Trust**

1.     Formation of the Liquidating Trust

On the Effective Date, the Liquidating Trust shall be established pursuant to the Liquidating Trust Agreement for the purpose of, *inter alia*, (a) administering the Liquidating Trust Assets, (b) prosecuting and/or resolving all Disputed Claims, (c) investigating and pursuing any Causes of Action the Debtors hold or may hold against any Entity, and (d) making all Distributions to the Beneficiaries provided for under the Plan. The Liquidating Trust is intended to qualify as a liquidating trust pursuant to Treas. Reg. § 301.7701-4(d), with no objective to continue or engage in the conduct of the trade or business, except to the extent reasonably necessary to, and consistent with, the liquidating purpose of the Liquidating Trust. Accordingly, the Liquidating Trustee shall, in an orderly manner, liquidate and convert to Cash the Liquidating Trust Assets, and make timely Distributions to the Beneficiaries, and not unduly prolong the duration of the Liquidating Trust. Neither the Liquidating Trust nor the Liquidating Trustee shall be or shall be deemed a successor-in-interest of the Debtors for any purpose other than as specifically set forth herein or in the Liquidating Trust Agreement.

2.     Funding of the Liquidating Trust

On the Effective Date, the Liquidating Trust Assets, including the GUC Fund, shall vest automatically in the Liquidating Trust. The Plan shall be considered a motion pursuant to Sections 105, 363 and 365 of the Bankruptcy Code for such relief. The transfer of the

Liquidating Trust Assets to the Liquidating Trust shall be made for the benefit and on behalf of the Beneficiaries. The assets comprising the Liquidating Trust Assets will be treated for tax purposes as being transferred by the Debtors to the Beneficiaries pursuant to the Plan in exchange for their Allowed Claims and then by the Beneficiaries to the Liquidating Trust in exchange for the beneficial interests in the Liquidating Trust. The Beneficiaries shall be treated as the grantors and owners of the Liquidating Trust. Upon the transfer of the Liquidating Trust Assets, the Liquidating Trust shall succeed to all of the Debtors' rights, title and interest in the Liquidating Trust Assets, and the Debtors will have no further interest in or with respect to the Liquidating Trust Assets. For the avoidance of doubt, at no point will the Debtors have any interests in, with or respect to the GUC Fund.

Except to the extent definitive guidance from the IRS or a court of competent jurisdiction (including the issuance of applicable Treasury Regulations or the receipt by the Liquidating Trustee of a private letter ruling if the Liquidating Trustee so requests one) indicates that such valuation is not necessary to maintain the treatment of the Liquidating Trust as a liquidating trust for purposes of the Internal Revenue Code and applicable Treasury Regulations, as soon as possible after the Effective Date, the Liquidating Trustee shall make a good-faith valuation of the Liquidating Trust Assets. The valuation shall be used consistently by all parties (including, without limitation, the Debtor, the Liquidating Trust, the Beneficiaries) for all federal income tax purposes.

DOCS_LA:332027.1

**F.**     **Rights and Powers of the Liquidating Trustee**

The Liquidating Trustee shall be deemed the Estates' representative in accordance with Section 1123 of the Bankruptcy Code and shall have all the rights and powers set forth in the Liquidating Trust Agreement, with the consent of the Oversight Committee as provided therein,, including, without limitation, the powers of a trustee under Sections 704 and 1106 of the Bankruptcy Code and Rule 2004 of the Bankruptcy Rules to act on behalf of the Liquidating Trust. Without limiting the foregoing, the Liquidating Trustee will have the right to, among other things, (1) effect all actions and execute all agreements, instruments and other documents necessary to implement the provisions of the Plan and the Liquidating Trust Agreement; (2) liquidate the Liquidating Trust Assets; (3) investigate, prosecute, settle, abandon or compromise any Causes of Action the Debtors hold or may hold against any Entity; (4) make all Distributions in accordance with the Plan and the Liquidating Trust Agreement; (5) administer and use the GUC Fund, administer the Liquidating Trust and pursue viable Causes of Action in accordance with the Plan and the Liquidating Trust Agreement; (6) establish and administer any necessary reserves for Disputed Claims that may be required; (7) object to the Disputed Claims and prosecute, settle, compromise, withdraw or resolve in any manner approved by the Bankruptcy Court such objections; (8) assert or waive any attorney-client privilege on behalf of the Debtors and Estates with regard to acts or events during time periods prior to the Petition Date; and (9) employ and compensate professionals and other agents, including, without limitation, existing Professionals employed by the Debtors or the Committee in accordance with the Liquidating Trust Agreement or the Plan, *provided*, *however*, that any such compensation shall be made only

out of the Liquidating Trust Assets, to the extent not inconsistent with the status of the

Liquidating Trust as a liquidating trust within the meaning of Treas. Reg. § 301.7701-4(d) for

federal income tax purposes.

**G.      Fees and Expenses of the Liquidating Trust**

Subject to payment in full of all Allowed Administrative Claims, and except as otherwise

ordered by the Bankruptcy Court, expenses incurred by the Liquidating Trust on or after the

Effective Date shall be paid in accordance with the Liquidating Trust Agreement without further

order of the Bankruptcy Court.

**H.      Transfer of Beneficial Interests in the Liquidating Trust**

Liquidating Trust Interests shall not be transferable except upon death of the interest

holder or by operation of law. The Liquidating Trust shall not have any obligation to recognize

any transfer of Claims or Equity Interests occurring after the Distribution Record Date.

**I.      Available Cash**

Available Cash, which expressly excludes the GUC Fund, shall be used to fund

distributions to Creditors (including holders of Allowed Administrative Claims, Priority Tax

Claim, and Priority Non-Tax Claims or other payments to be made pursuant to or otherwise

consistent with the Plan and the Confirmation Order.  Notwithstanding any other provision of the

Plan or the Liquidating Trust Agreement, Available Cash will be used in the first instance by the

Liquidating Trustee to pay or reserve for all unpaid Administrative Claims, Priority Tax Claims,

and Priority Non-Tax Claims (including any Disputed Claims until such Claims are resolved),

prior to use of the Available Cash for purposes of the Liquidating Trust.  For the avoidance of

doubt, the GUC Fund may only be used to fund distributions to be made to Holders of Class 6

Claims on account of Allowed Class 6 Claims, pursuit of Causes of Action, and administration

of the Liquidating Trust.  Subject to the restrictions set forth in this Plan, Available Cash (to the

extent remaining after payment of or reserve for all Allowed Administrative Claims, Priority Tax

Claims, and Priority Non-Tax Claims, the GUC Fund, and the proceeds of any other Liquidating

Trust Assets, will be used by the Liquidating Trustee to pay for the expenses of the Liquidating

Trust in accordance with the Liquidating Trust Agreement.

On or as soon as practicable following the Effective Date, the Liquidating Trust Assets

Account shall be opened by the Liquidating Trustee and funded with all Available Cash, which

money shall constitute Liquidating Trust Assets.  Thereafter, from time to time, upon receipt of

any Liquidation Proceeds or any Litigation Recovery, the Liquidating Trustee shall deposit such

funds into the Liquidating Trust Assets Account, and they shall become part of the Liquidating

Trust Assets for funding distributions to Creditors and paying the expenses of the Liquidating

Trust.

**J.**      **Litigation.**

Except as otherwise provided in this Plan, all Litigation is retained, vested in the

Liquidating Trust, and preserved pursuant to Section 1123(b) of the Bankruptcy Code.  From and

after the Effective Date, all Litigation will be prosecuted or settled by the Liquidating Trustee.

To the extent any Litigation is already pending on the Effective Date, the Liquidating Trustee, as

successor to the Debtors or the Committee (in any derivative capacity or as an intervening party),

will continue the prosecution of such Litigation and shall be substituted as plaintiff, defendant, or

in any other capacity for the Debtors or the Committee pursuant to this Plan and the Confirmation Order on the Effective Date, without need for any further motion practice or notice in any case, action, or matter.

**K.**     **Dissolution of Committee.**

On the Effective Date, the Committee will dissolve, and the members of the Committee and the Committee's Professionals will cease to have any role arising from or relating to the Chapter 11 Cases, except in connection with final fee applications of Professionals for services rendered prior to the Effective Date (including the right to object thereto). The Professionals retained by the Committee and the members thereof will not be entitled to assert any fee claims for any services rendered to the Committee or expenses incurred in the service of the Committee after the Effective Date, except for reasonable fees for services rendered, and actual and necessary costs incurred, in connection with any applications for allowance of Professional Fees pending on the Effective Date or filed and served after the Effective Date pursuant to Section 2(C) of the Plan. Nothing in the Plan shall prohibit or limit the ability of the Debtors' or Committee's Professionals to represent the Liquidating Trustee or to be compensated or reimbursed per the Plan and the Liquidating Trust Agreement in connection with such representation.

**L.**     **Full and Final Satisfaction.**

Commencing upon the Effective Date, subject to the terms of this Plan and the Liquidating Trust Agreement, the Liquidating Trustee shall be authorized and directed to distribute the amounts required under the Plan to the Holders of Allowed Claims according to the

provisions of the Plan.  Upon the Effective Date, all Debts of the Debtors shall be deemed fixed and adjusted pursuant to this Plan, and the Liquidating Trust shall have no liability on account of any Claims or Equity Interests except as set forth in this Plan and in the Liquidating Trust Agreement.  All payments and all distributions made by the Liquidating Trustee under the Plan shall be in full and final satisfaction, settlement, and release of all Claims against the Liquidating Trust; *provided, however*, that nothing contained in this Section V of the Plan, or in any other provision of this Plan, shall be deemed to constitute or result in a discharge of the Debtor under Bankruptcy Code Section 1141(d).

**M.**     **Distribution Procedures.**

1.      <u>Distribution Dates.</u>  The Liquidating Trustee shall make Distributions to Holders of Claims as provided in Article III of the Plan.  Subject to the terms of the Liquidating Trust Agreement, the Liquidating Trustee may, in its sole discretion, make a full or partial Pro Rata Distribution to the Holders of Unsecured Claims on the Initial Distribution Date or a Subsequent Distribution Date.

2.      <u>Subsequent Distributions.</u>  Any Distribution not made on the Initial Distribution Date or a Subsequent Distribution Date because the Claim relating to such Distribution had not been Allowed on that Distribution Date shall be held by the Liquidating Trust for Distribution on any Subsequent Distribution Date after such Claim is Allowed.  No interest shall accrue or be paid on the unpaid amount of any Distribution.

3.      <u>Distribution Record Date.</u>  Except as otherwise provided in a Final Order of the Bankruptcy Court, the transferees of Claims that are transferred pursuant to Bankruptcy Rule

49

3001 on or prior to the Distribution Record Date will be treated as the Holders of those Claims

for all purposes, notwithstanding that any period provided by Bankruptcy Rule 3001 for

objecting to the transfer may not have expired by the Distribution Record Date.  The Liquidating

Trustee shall have no obligation to recognize any transfer of any Claim occurring after the

Distribution Record Date.  In making any Distribution with respect to any Claim, the Liquidating

Trustee shall be entitled instead to recognize and deal with, for all purposes hereunder, only the

Entity that is listed on the proof of claim filed with respect thereto or on the Schedules as the

Holder thereof as of the close of business on the Distribution Record Date and upon such other

evidence or record of transfer or assignment that is known to the Liquidating Trustee as of the

Distribution Record Date.

       4.        <u>Manner of Cash Payments Under the Plan or Liquidating Trust Agreement.</u>  Cash

payments made pursuant to the Plan or Liquidating Trust Agreement shall be in United States

dollars by checks drawn on a domestic bank selected by the Liquidating Trustee or by wire

transfer from a domestic bank, at the option of the Liquidating Trustee.

       5.        <u>Time Bar to Cash Payments by Check.</u>  Checks issued by the Liquidating Trustee

on account of Allowed Claims shall be null and void if not negotiated within 90 days after the

date of issuance thereof.  Requests for the reissuance of any check that becomes null and void

pursuant to this Article shall be made directly to the Liquidating Trustee by the Holder of the

Allowed Claim to which the check was originally issued.  Any Claim in respect of such voided

check shall be made in writing on or before the later of six months from the Effective Date or 90

days after the date of issuance thereof.  After that date, all Claims in respect of voided checks

shall be discharged and forever barred and the proceeds of those checks shall revest in and become the property of the Liquidating Trust as unclaimed property in accordance with Section 347(b) of the Bankruptcy Code.

**N.      Liquidating Trust Assets Account.**

Unless otherwise provided in the Confirmation Order, the Liquidating Trust Assets Account shall be invested by the Liquidating Trustee in a manner consistent with the objectives of Section 345(a) of the Bankruptcy Code and in its reasonable and prudent exercise of discretion.  The Liquidating Trustee shall have no obligation or liability to Beneficiaries in connection with such investments in the event of any unforeseeable insolvency of any financial institution where such funds are held.

**O.      Resolution of Disputed Claims.**

1.      _No Distribution Pending Allowance._  Notwithstanding any other provision of the Plan, the Liquidating Trustee shall not distribute any Cash or other property on account of any Disputed Claim unless and until such Claim becomes Allowed.  Nothing contained herein, however, shall be construed to prohibit or require payment or Distribution on account of any undisputed portion of a Claim.

2.      _Resolution of Disputed Claims._  Unless otherwise ordered by the Bankruptcy Court after notice and a hearing, the Liquidating Trustee shall have the right to make, file, prosecute, settle, withdraw, or resolve objections to Claims, with consent of the Oversight Committee as set forth in Art. V.C. above.  The costs of pursuing the objections to Claims shall be borne by the Liquidating Trust.  From and after the Confirmation Date, all objections with

51

respect to Disputed Claims shall be litigated to a Final Order except to the extent, the Liquidating Trustee elects to withdraw any such objection or the Liquidating Trustee and the Claimant elect to compromise, settle, or otherwise resolve any such objection, in which event they may settle, compromise, or otherwise resolve any Disputed Claim or Disputed Equity Interest without approval of the Bankruptcy Court.

3. <u>Objection Deadline.</u> All objections to Claims shall be filed and served upon the Claimant not later than the Claims Objection Deadline, as such may be extended by order of the Bankruptcy Court.

4. <u>Estimation of Claims.</u> At any time, (a) prior to the Effective Date, the Debtors, and (b) after the Effective Date, the Liquidating Trustee, may request that the Bankruptcy Court estimate any contingent or unliquidated Claim to the extent permitted by Section 502(c) of the Bankruptcy Code regardless of whether the Debtors or the Liquidating Trust have previously objected to such Claim or whether the Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court shall have jurisdiction to estimate any Claim at any time during Litigation concerning any objection to such Claim, including during the pendency of any appeal relating to any such objection. If the Bankruptcy Court estimates any contingent or unliquidated Claim, that estimated amount shall constitute either the Allowed amount of such Claim or a maximum limitation on the Claim, as determined by the Bankruptcy Court. If the estimated amount constitutes a maximum limitation on the Claim, the Debtors or the Liquidating Trust, as applicable, may elect to pursue supplemental proceedings to object to the ultimate allowance of the Claim. All of the aforementioned Claims objection, estimation, and resolution procedures

are cumulative and not exclusive of one another. Claims may be estimated and subsequently compromised, settled, withdraw, or resolved by any mechanism of the Bankruptcy Court.

5.  Disallowance of Claims.

(a) Except as otherwise agreed or ordered by the Bankruptcy Court, any and all proofs of claim filed after the Bar Date shall not be treated as an Allowed Claim for purposes of Distribution without any further notice or action, and Holders of such Claims may not receive any Distributions on account of such Claims, unless on or before the Confirmation Date the Bankruptcy Court has entered an order deeming such Claim to be timely filed; *provided, however*, that such Claims shall be deemed Allowed (unless Disputed) after the payment in full of all Allowed Administrative Claims, Allowed Priority Tax Claims, Allowed Secured Claims, Allowed Priority Non-Tax Claims, and all Allowed Unsecured Claims.

(b) Any Claims held by Entities from which property is recoverable under Sections 542, 543, 550, or 553 of the Bankruptcy Code or Entities that are transferees of transfers avoidable under Section 522(f), 522(h), 544, 545, 547, 548, 549, or 724(a) of the Bankruptcy Code, provided that such Cause of Action is retained by the Liquidating Trust, shall be deemed disallowed pursuant to Section 502(d) of the Bankruptcy Code, and Holders of such Claims may not receive any Distributions on account of such Claims until such time as such Causes of Action the Debtors hold or may hold against any Entity have been resolved or a Bankruptcy Court order with respect thereto has been entered and all sums due, if any, to the Estate by that Entity have been turned over or paid to the Debtors or Liquidating Trust.

6. <u>Adjustment Without Objection.</u> Any Claim that has been paid or satisfied, or any Claim that has been amended or superseded, may be adjusted or expunged on the Claims Register at the direction of the Debtors or the Liquidating Trustee, as applicable, without an objection filed and without further notice to or action, order, or approval of the Bankruptcy Court.

**P.    <u>Reserve Provisions for Disputed Claims.</u>**

1. <u>Establishment of Disputed Reserves.</u> On or an Distribution Date, the Liquidating Trustee shall reserve Cash required for distribution on Disputed Claims as if such Claims were Allowed as filed with any Disputed Claims that are unliquidated or contingent being reserved in an amount reasonably determined by the Liquidating Trustee (the "<u>Disputed Claim Reserve</u>"). On each Distribution date after the Effective Date in which the Liquidating Trustee makes Distributions to Holders of Allowed Claims, the Liquidating Trustee shall retain on account of Disputed Claims an amount the Liquidating Trustee estimates is necessary to fund the Pro Rata Share of such Distributions to Holders of Disputed Claims if such Claims were Allowed, with any Disputed Claims that are unliquidated or contingent being reserved in an amount reasonably determined by the Liquidating Trustee.

2. <u>Maintenance of Disputed Claim Reserves.</u> The Liquidating Trust shall hold property in the Disputed Claim Reserve in trust for the benefit of the Holders of Disputed Claims that are ultimately determined to be Allowed. Each Disputed Claim Reserve shall be closed and extinguished by the Liquidating Trust when all Distributions and other dispositions of Cash or other property required to be made hereunder will have been made in accordance with the terms

54

of the Plan.  Upon closure of a Disputed Claim Reserve, all Cash or other property held in that Disputed Claim Reserve shall revest in and become unrestricted property of the Liquidating Trust.  All funds or other property that vest or revest in the Liquidating Trust pursuant to this paragraph shall be used to pay by the Liquidating Trust in accordance with the Plan and the Liquidating Trust Agreement.

        3.     <u>Limitations on Funding Disputed Claim Reserves.</u>  Except as expressly set forth in the Plan, neither the Debtors, the Liquidating Trustee, nor the Oversight Committee shall have any duty to fund any Disputed Claim Reserve except from the Liquidating Trust Assets.

**Q.**     **<u>Rounding</u>.**

        Whenever any payment of a fraction of a cent would otherwise be called for, the actual distribution shall reflect a rounding of such fraction down to the nearest cent.

**R.**     **<u>No Cash Payments of Less Than $20 on Account of Allowed Claims</u>.**

        Notwithstanding anything herein to the contrary, except with respect to Administrative, Priority Tax, Other Secured and Priority Non-Tax Claims, if a Distribution to be made to a Holder of an Allowed Claim on the Initial Distribution Date or any Subsequent Distribution Date would be $20 or less in the aggregate, no such Distribution will be made to that Holder unless a request therefor is made in writing to the Liquidating Trustee.  If such request is made, such Cash shall be held for such Holder until the earlier of (i) the next time an interim distribution is made to the Holders of Allowed Claims (unless the distribution would still be less than $20, in which case this Section shall again apply), or (ii) the date on which Final Distributions are made to the Holders of Allowed Claims.

DOCS_LA:332027.1

**S.**     **Delivery of Distributions and Unclaimed Property.**

1.     _Delivery of Distributions._  Subject to Bankruptcy Rule 9010 and except as otherwise provided herein, Distributions to the Holders of Allowed Claims shall be made by the Liquidating Trustee at (a) the address of each Claimant as set forth in the Schedules, unless superseded by the address set forth on proof(s) of claim filed by such Claimant, or (b) the last known address of such Claimant if no proof of claim is filed or the Debtors or Liquidating Trustee have been notified in writing of a change of address.  If any Distribution is returned as undeliverable, the Liquidating Trustee may, in its discretion, make reasonable efforts to determine the current address of the Holder of the Claim with respect to which the Distribution was made as the Liquidating Trustee deems appropriate, but no Distribution to any such Holder shall be made unless and until the Liquidating Trustee has determined the then-current address of such Holder, at which time the Distribution to such Holder shall be made without interest. Amounts in respect of any undeliverable Distributions shall be returned to, and held in trust by, the Liquidating Trustee until the Distributions are claimed or are deemed to be unclaimed property under Section 347(b) of the Bankruptcy Code.  The Liquidating Trustee shall have the discretion to determine how to make Distributions in the most efficient and cost-effective manner possible; _provided, however_, that its discretion may not be exercised in a manner inconsistent with any express requirements of the Plan or Liquidating Trust Agreement.  On or about the time that the Final Distribution is made, the Liquidating Trustee may make a charitable donation with undistributed funds if, in the reasonable judgment of the Liquidating Trustee, the cost of calculating and making the Final Distribution of the remaining funds is excessive in

relation to the benefits to the holders of Claims that would otherwise be entitled to such Distributions, and such charitable donation is provided to an entity not otherwise related to the Debtors or the Liquidating Trustee.

2.      Unclaimed Property.  Except with respect to property not distributed because it is being held in a Disputed Reserve, Distributions that are not claimed by the later of the expiration of six (6) months from the Effective Date or (90) days after the date of a Distribution shall be deemed to be unclaimed property under Section 347(b) of the Bankruptcy Code and shall vest or revest in the Liquidating Trust, and the Claims with respect to which those Distributions are made shall be automatically cancelled.  After the expiration of that period, the claim of any Entity to those Distributions shall be cancelled.  Nothing contained in the Plan shall require the Liquidating Trust to attempt to locate any holder of an Allowed Claim.  All funds or other property that vest or revest in the Liquidating Trust pursuant to this Article shall be distributed by the Liquidating Trustee to the other holders of Allowed Claims in accordance with the provisions of the Plan or the Liquidating Trust Agreement.

**T.      Withholding Taxes.**

In connection with making Distributions under this Plan, to the extent applicable, the Liquidating Trustee shall comply with all tax withholding and reporting requirements imposed on it by any Governmental Unit, and all Distributions pursuant to this Plan shall be subject to such withholding and reporting requirements.  The Liquidating Trustee may withhold the entire Distribution to any Holder of an Allowed Claim until such time as such Holder provides the necessary information to comply with any withholding requirements of any Governmental Unit.

Any property so withheld will then be paid by the Liquidating Trustee to the appropriate authority. If the Holder of an Allowed Claim fails to provide the information necessary to comply with any withholding requirements of any Governmental Unit within six months after the date of first notification to the Holder of the need for such information or for the Cash necessary to comply with any applicable withholding requirements, then such Holder's Distribution shall be treated in accordance with Article V, Paragraph Q of the Plan.

**U.     United States Trustee Fees.**

All outstanding amounts due under 28 U.S.C. § 1930 that have not been paid shall be paid by the Debtors on or before the Effective Date. Thereafter, the Liquidating Trustee shall pay any statutory fees due pursuant to 28 U.S.C. § 1930(a)(6) and such fees shall be paid until entry of a Final Decree or an order converting or dismissing the Chapter 11 Cases.

**V.     Books and Records.**

The Debtors shall transfer dominion and control over all of their books and records, in whatever form, manner or media, including, without limitation, the specific provision and presentation, to the Liquidating Trustee of all passcodes for security systems and computers, keys, keycards, and notice letters to landlords or other relevant parties.

## VI.

## TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

**A.     Rejection of Executory Contracts and Unexpired Leases**

Except with respect to: (i) executory contracts or unexpired leases that were previously assumed or rejected by order of the Bankruptcy Court, (ii) the Strict Foreclosure Agreement, any

DOCS_LA:332027.1

prepetition agreements entered into by the Debtors in connection with the Strict Foreclosure Agreement and the Prepetition Strict Foreclosure, and any agreements to be assigned to Lineage pursuant to the Strict Foreclosure Agreement (all such agreements described in this subsection (ii) shall be deemed as of the Effective Date), and (iii) executory contracts or unexpired leases that are the subject of a pending motion to assume or reject, pursuant to Section 365 of the Bankruptcy Code, on the Effective Date, each executory contract and unexpired lease entered into by the Debtors prior to the Petition Date that has not previously expired or terminated pursuant to its own terms shall be deemed rejected pursuant to Section 365 of the Bankruptcy Code; *provided, however*, that nothing in this Section VI.A shall cause the rejection, breach, or termination of any contract of insurance benefiting the Debtors and the Estates, the Debtors' officers, directors and managers and/or the Liquidating Trust. Nothing in this Article VI shall be construed as an acknowledgement that a particular contract or agreement is executory or is properly characterized as a lease. The Confirmation Order shall constitute an order of the Bankruptcy Court approving such rejections pursuant to Section 365 of the Bankruptcy Code, as of the Effective Date. The non-Debtor parties to any rejected personal property leases shall be responsible for taking all steps necessary to retrieve the personal property that is the subject of such executory contracts and leases, and neither the Debtors nor the Liquidating Trust shall bear any liability for costs associated with such matters.

**B.**     **Claims Based on Rejection of Executory Contracts or Unexpired Leases**

All proofs of claim with respect to Claims arising from the rejection of executory contracts or unexpired leases pursuant to Confirmation of the Plan, if any, must be filed with the

59

Claims Agent within thirty (30) days after the earlier of the Effective Date or an order of the Bankruptcy Court approving such rejection. Any Claim arising from the rejection of an executory contract or unexpired lease pursuant to Confirmation of the Plan that is not filed within such times will be subject to objection. All such Claims for which Proofs of Claim are timely and properly filed and ultimately Allowed will be treated as Unsecured Claims subject to the provisions of Article 3 hereof.

**C.**     <u>**Insurance Policies**</u>

Notwithstanding anything to the contrary contained herein, Confirmation of the Plan shall not discharge, impair or otherwise modify any obligations of the Insurance Policies. To the extent one or more of the Insurance Policies provide potential coverage related to one or more Causes of Action the Debtors hold or may hold against any Entity, the Debtors shall, to the extent permissible under each Insurance Policy, assign all of their rights thereunder with respect to such Causes of Action to the Liquidating Trust. All net proceeds (including, for the avoidance of doubt, net of any deductibles or retentions) of Insurance Policies received by the Liquidating Trust shall be treated as proceeds of such Causes of Action for all purposes under the Plan. The Debtors shall take no action to or otherwise impair the Insurance Policies. Nothing in this Plan shall diminish or impair the enforceability of the Insurance Policies and related agreements that may cover Claims and Causes of Action against the Debtors or any other Entity.

# VII.

## CONDITIONS PRECEDENT TO CONFIRMATION

## OF THE PLAN AND TO THE EFFECTIVE DATE

**A.**     **Conditions to Confirmation of the Plan.**

Confirmation of this Plan is conditioned upon the satisfaction of each of the following conditions precedent, any one or more of which may be waived by the Debtors: (i) the Bankruptcy Court shall have approved a disclosure statement to this Plan in form and substance acceptable to the Debtors and (ii) the Debtors shall have determined that there will be sufficient Cash on the Effective Date to pay (or with respect to Disputed Claims to reserve for as required pursuant to the Plan) (i) Allowed Administrative Claims, Non-Tax Priority Claims, and Priority Tax Claims in full (or in such lesser amount as may be agreed to by the Claimant) and (ii) the Confirmation Order to be presented to the Bankruptcy Court at the Confirmation Hearing shall be acceptable to the Debtors in form and substance.

**B.**     **Effect of Failure of Conditions to Confirmation.**

If any one or more of the conditions in Section VII.A is not met, the Debtors may withdraw this Plan and, if withdrawn, this Plan shall be of no further force or effect.

**C.**     **Conditions to Effective Date.**

The occurrence of the Effective Date is conditioned upon the satisfaction of each of the following conditions precedent, any one or more of which may be waived by the Debtors: (i) a Confirmation Order in form and substance acceptable to the Debtors shall have been entered by the Bankruptcy Court and become a Final Order which is not subject to any stay of effectiveness;

(ii) the Liquidating Trust shall have been created pursuant to the terms of the Plan, the Liquidating Trustee shall have been appointed by order of the Bankruptcy Court (which may be the Confirmation Order), and the Liquidating Trust Agreement shall have been executed by the Liquidating Trustee; (iii) the GUC Fund shall have been fully funded and released to the Liquidating Trustee upon the Effective Date; and (iv) all other actions and documents determined by the Debtors to be necessary to implement the Plan shall have been effected and executed.

**D.    Effective Date.**

Provided the above-referenced conditions to the occurrence of the Effective Date are satisfied, this Plan shall become effective on the Effective Date.

**VIII.**

**EFFECTS OF CONFIRMATION**

**A.    Binding Effect of Plan.**

The provisions of the confirmed Plan shall bind the Debtors, the Liquidating Trust, the Liquidating Trustee, any Entity acquiring property under the Plan, any Beneficiary, and any Creditor or Equity Interest Holder, whether or not such Creditor or Equity Interest Holder has filed a Proof of Claim or Equity Interest in the Chapter 11 Cases, whether or not the Claim of such Creditor or the Equity Interest of such Equity Interest Holder is impaired under the Plan, and whether or not such Creditor or Equity Interest Holder has accepted or rejected the Plan.  All Claims and Debts shall be fixed and adjusted pursuant to this Plan.  This Plan shall also bind any taxing authority, recorder of deeds, or similar official for any county, state, or Governmental

DOCS_LA:332027.1

Unit or parish in which any instrument related to under this Plan or related to any transaction contemplated under this Plan is to be recorded with respect to any taxes of the kind specified in Bankruptcy Code Section 1146(a).

**B.** **Vesting of Property of Debtors in the Liquidating Trust.**

Upon the Effective Date, title to all property of the Estates of the Debtors in the Chapter 11 Cases shall vest in the Liquidating Trust and shall be retained by the Liquidating Trust for the purposes contemplated under this Plan pursuant to the Liquidating Trust Agreement. Without limiting the generality of the foregoing, all Causes of Action the Debtors hold or may hold against any Entity, Litigation Recoveries, rights to Liquidation Proceeds, and all resulting Liquidating Trust Assets shall vest in the Liquidating Trust upon the Effective Date and shall no longer constitute property of the Estates.

**C.** **Property Free and Clear.**

Except as otherwise provided in this Plan or the Confirmation Order, all property that shall vest in the Liquidating Trust shall be free and clear of all Claims, Equity Interests, Liens, interests, charges, or other encumbrances of Creditors or Interest Holders, other than as set forth herein, in the Liquidating Trust Agreement, and in relevant documents, agreements, and instruments contained in the Plan Supplement. Following the Effective Date, the Liquidating Trustee may transfer and dispose of any such property free of any restrictions imposed by the Bankruptcy Code or the Bankruptcy Rules and without further approval of the Bankruptcy Court or notice to Creditors, except as may otherwise be required under the Plan or the Confirmation Order.

**D.**     <u>Exculpation.</u>

The Debtors, the Debtors' officers and directors that served during the Chapter 11 Cases, the Committee, the Committee members, and each of their respective professionals retained during the Chapter 11 Cases (collectively, the "<u>Exculpated Parties</u>"), will neither have nor incur any liability to any entity for any action in good faith taken or omitted to be taken between the Petition Date and Effective Date in connection with or related to the Chapter 11 Cases, the sale or other disposition of the Debtors' assets or the formulation, preparation, dissemination, implementation, Confirmation, or Consummation of the Plan, the Disclosure Statement, or any agreement created or entered into in connection with the Plan; *provided, however*, that this limitation will not affect or modify the obligations created under this Plan, or the rights of any Holder of an Allowed Claim to enforce its rights under the Plan, and shall not release any action (or inaction) constituting willful misconduct, fraud, or gross negligence (in each case subject to determination of such by final order of a court of competent jurisdiction); *provided* that any Exculpated Party shall be entitled to reasonably rely upon the advice of counsel with respect to its duties and responsibilities (if any) under this Plan, and such reasonable reliance shall form a defense to any such claim, Cause of Action, or liability.  Without limiting the generality of the foregoing, each Exculpated Party shall be entitled to and granted the protections of Section 1125(e) of the Bankruptcy Code.

**E.**     <u>Releases.</u>

1.     <u>Debtor Release</u>.

DOCS_LA:332027.1

Pursuant to section 1123(b) of the Bankruptcy Code, and except as otherwise specifically provided in the Plan, for good and valuable consideration, on and after and subject to the occurrence of the Effective Date, the Debtors and the Estates shall release (the "**Debtor Release**") each Released Party, and each Released Party is deemed released by the Debtors and the Estates (provided that the Debtor Release in favor of the ABL Agent, the ABL Lenders and their respective Related Persons is subject to and conditioned upon the release of the GUC Fund to the Liquidating Trustee on the Effective Date) from any and all claims, obligations, rights, suits, damages, Causes of Action, remedies, and liabilities whatsoever, including any derivative claims, asserted or assertable on behalf of any of the Debtors or the Estates, as applicable, whether known or unknown, foreseen or unforeseen, asserted or unasserted, accrued or unaccrued, matured or unmatured, determined or determinable, disputed or undisputed, liquidated or unliquidated, or due or to become due, existing or hereinafter arising, in law, equity, or otherwise, that the Debtors or the Estates would have been legally entitled to assert in their own right, or on behalf of the Holder of any Claim or Interest or other entity, based on or relating to, or in any manner arising from, in whole or in part, the Debtors, the Debtors' liquidation, the Chapter 11 Cases, the purchase, sale, transfer of any security, asset, right, or interest of the Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between any Debtors and any Released Party, the restructuring of Claims and Interests prior to or in the Chapter 11 Cases, the Strict Foreclosure Agreement, the Prepetition Strict Foreclosure,

the negotiation, formulation, or preparation of the Plan or related agreements, instruments, or other documents, any other act or omission, transaction, agreement, event, or other occurrence taking place on and before the Petition Date, other than claims or liabilities arising out of or relating to any act or omission of a Released Party that constitutes fraud, willful misconduct, or gross negligence; provided, that the foregoing Debtor Release shall not operate to waive or release any obligations of any party under the Plan, the Strict Foreclosure Agreement, or any other document, instrument, or agreement executed to implement the Plan and/or the Strict Foreclosure Agreement; and further provided that nothing herein shall act as a discharge of the Debtors.

For the avoidance of doubt, neither the Maines Brothers nor any W&D Entity constitute Released Parties, and no Causes of Action against either the Maines Brothers and/or W&D Entities are being released by the Debtors or the Estates by virtue of the Debtor Release.

Without limiting the foregoing with respect to any of the Released Parties, and solely for the avoidance of doubt, on and after and subject to the occurrence of the Effective Date, the Debtors and the Estates shall irrevocably release Lineage, and Lineage shall be deemed released, from any action, claim, suit, or any other form of liability related to the avoidance or recovery of any transfers of property determined to be preferential, fraudulent, or avoidable pursuant to Sections 544, 545, 547, 548, 549(a), and 550 of the Bankruptcy Code.

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval,

of the Debtor Release, which includes by reference each of the related provisions and definitions contained herein, and further, shall constitute the Bankruptcy Court's finding that the Debtor Release is: (a) in exchange for the good and valuable consideration provided by the Released Parties; (b) in the best interests of the Debtors and all Holders of Claims and Interests; (c) fair, equitable, and reasonable; (d) given and made after due notice and opportunity for hearing; and (e) a bar to any of the Debtors or the Estates asserting any Claim or Cause of Action released pursuant to the Debtor Release.

2. **Third Party Release.**

On and after and subject to the occurrence of the Effective Date, except as otherwise provided in the Plan, Lineage and each Claimant (collectively, the "Releasing Parties") who (i) is not Impaired under the Plan or (ii) affirmatively votes to accept the Plan and who does not elect to "opt-out" by marking the appropriate box on such Releasing Party's respective Ballot, for themselves and their respective successors, assigns, transferees, and such Claimants' officers and directors, agents, members, financial and other advisors, attorneys, employees, partners, affiliates, and representatives (in each case in their capacity as such), shall release (the "Third Party Release") each Released Party, and each of the Debtors, the Estates, and the Released Parties shall be deemed released **(provided that the Third Party Release in favor of the ABL Agent, the ABL Lenders and their respective Related Persons is subject to and conditioned upon the release of the GUC Fund to the Liquidating Trustee on the Effective Date)** from any and all claims, interests, obligations, rights, suits, damages, Causes of Action, remedies, and liabilities whatsoever, including any derivative claims asserted or assertable on behalf of any of

67

the Debtors or the Estates, as applicable, whether known or unknown, foreseen or unforeseen, asserted or unasserted, accrued or unaccrued, matured or unmatured, determined or determinable, disputed or undisputed, liquidated or unliquidated, or due or to become due, existing or hereinafter arising, in law, equity, or otherwise, that such Entity would have been legally entitled to assert (whether individually or collectively), based on or relating to, or in any manner arising from, in whole or in part, the Debtors, the Debtors' liquidation, the Chapter 11 Cases, the purchase, sale, transfer of any security, asset, right, or interest of the Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between any Debtors and any Released Party, the restructuring of Claims and Interests prior to or in the Chapter 11 Cases, the Strict Foreclosure Agreement, the Prepetition Strict Foreclosure, the negotiation, formulation, or preparation of the Plan or related agreements, instruments, or other documents, any other act or omission, transaction, agreement, event, or other occurrence taking place on and before the Petition Date, other than claims or liabilities arising out of or relating to any act or omission of a Released Party that constitutes fraud, willful misconduct or gross negligence. Notwithstanding anything to the contrary in the foregoing, the Third Party Release shall not release any obligations of any party under the Plan, the Strict Foreclosure Agreement, or any other document, instrument, or agreement executed to implement the Plan and/or the Strict Foreclosure Agreement.

For the avoidance of doubt, neither the Maines Brothers nor any W&D Entity constitute Released Parties, and no Causes of Action against either the Maines Brothers or W&D Entities

are being released by any Releasing Party pursuant to the Third Party Release. In consideration of the Third Party Release, Lineage agrees to waive all rights of recoveries and distributions from the Estates and Liquidating Trust.

Notwithstanding anything herein to the contrary, the Third Party Release set forth herein shall not be applicable as between Lineage and any individual member of the Committee (along with any such member's Related Persons), and such member and/or its Related Persons shall not be deemed Released Parties with respect to Lineage.

Without limiting the foregoing with respect to any of the Released Parties, and solely for the avoidance of doubt, on and after and subject to the occurrence of the Effective Date, the Releasing Parties shall irrevocably release Lineage, and Lineage shall be deemed released, from any action, claim, suit, or any other form of liability related to the avoidance or recovery of any transfers of property determined to be preferential, fraudulent, or avoidable pursuant to Sections 544, 545, 547, 548, 549(a), and 550 of the Bankruptcy Code.

**F.      Injunction.**

**In implementation of the Plan, except as otherwise expressly provided in the Confirmation Order or the Plan, and except in connection with the enforcement of the terms of the Plan or any documents provided for or contemplated in the Plan, all entities who have held, hold or may hold Claims against or Interests in the Debtors, the Liquidating Trust, or the Estates that arose prior to the Effective Date are permanently enjoined from: (a) commencing or continuing in any manner, directly or indirectly, any action or other proceeding of any kind against the Debtors, the Estates, the Liquidating**

69

**Trust, the Oversight Committee, the GUC Fund, or any of the Liquidating Trust Assets, with respect to any such Claim or Interest; (b) the enforcement, attachment, collection, or recovery by any manner or means, directly or indirectly, of any judgment, award, decree, or order against the Debtors, the Estates, the Liquidating Trust, the Oversight Committee, the GUC Fund, or any of the Liquidating Trust Assets with respect to any such Claim or Interest; (c) creating, perfecting, or enforcing, directly or indirectly, any Lien or encumbrance of any kind against the Debtors, the Estates, or the Liquidating Trust, the Oversight Committee, the GUC Fund, or any of the Liquidating Trust Assets with respect to any such Claim or Interest; and (d) any act, in any manner, in any place whatsoever, that does not conform to or comply with the provisions of the Plan with respect to such Claim or Interest. Nothing contained in this Section shall prohibit the Holder of a timely filed Proof of Claim from litigating its right to seek to have such Claim declared an Allowed Claim and paid in accordance with the distribution provisions of this Plan, or enjoin or prohibit the interpretation or enforcement by the Claimant of any of the obligations of the Debtors or the Liquidating Trust under this Plan.**

**G.**     **<u>Post-Confirmation Liability of Liquidating Trustee and Oversight Committee.</u>**

The Liquidating Trustee and the Oversight Committee, together with their consultants, agents, advisors, attorneys, accountants, financial advisors, other representatives and the professionals engaged by the foregoing (collectively, the "<u>Indemnified Parties</u>") shall not be liable for any and all liabilities, losses, damages, claims, Causes of Action, costs and expenses, including but not limited to attorneys' fees arising out of or due to their actions or omissions, or

consequences of such actions or omissions, to the Holders of Claims or Equity Interests for any action or inaction taken in good faith in connection with the performance or discharge of their duties under this Plan, except the Indemnified Parties will be liable for actions or inactions that are grossly negligent, fraudulent, or which constitute willful misconduct (in each case, liability shall be subject to determination by final order of a court of competent jurisdiction). However, any act or omission taken with the approval of the Bankruptcy Court, and not inconsistent therewith, will be conclusively deemed not to constitute gross negligence, fraud or willful misconduct. In addition, the Liquidating Trust and the Estate shall, to the fullest extent permitted by the laws of the State of Delaware, indemnify and hold harmless the Indemnified Parties from and against and with respect to any and all liabilities, losses, damages, claims, costs and expenses, including but not limited to attorneys' fees arising out of or due to their actions or omissions, or consequences of such actions or omissions, with respect to the Liquidating Trust and the Estates or the implementation or administration of the Plan if the Indemnified Party acted in good faith and in a manner reasonably believed to be in or not opposed to the best interest of the Liquidating Trust and the Estates. To the extent the Liquidating Trust indemnifies and holds harmless the Indemnified Parties as provided above, the legal fees and related costs incurred by counsel to the Liquidating Trustee in monitoring and participating in the defense of such claims giving rise to the right of indemnification shall be paid as Liquidating Trust Expenses. All rights of the Persons exculpated and indemnified pursuant hereto shall survive confirmation of the Plan.

**H.** **Preservation of Rights of Action.**

1. **Vesting of Causes of Action.**

(a) Except as otherwise provided in the Plan or Confirmation Order, in accordance with Section 1123(b)(3) of the Bankruptcy Code, any Causes of Action that the Debtors hold or may hold against any Entity shall vest upon the Effective Date in the Liquidating Trust.

(b) Except as otherwise provided in the Plan or Confirmation Order, after the Effective Date, the Liquidating Trustee, with consent from the Oversight Committee as provided for in the Liquidating Trust Agreement, shall have the exclusive right to institute, prosecute, abandon, settle, or compromise any Causes of Action the Debtors hold or may hold against any Entity, in accordance with the terms of the Liquidating Trust Agreement and without further order of the Bankruptcy Court, in any court or other tribunal, including, without limitation, in an adversary proceeding filed in the Chapter 11 Cases.

(c) Causes of Action and recoveries therefrom shall remain the sole property of the Liquidating Trust, for the ratable benefit of the Beneficiaries of the Liquidating Trust, and holders of Claims shall have no direct right or interest in to any such Causes of Action or recovery.

2. **Preservation of All Causes of Action Not Expressly Settled or Released.**

(a) Unless a Cause of Action against a holder of a Claim or other Entity is expressly waived, relinquished, released, compromised, or settled in the Plan an or any Final Order (including the Confirmation Order), the Debtors and the Liquidating Trustee expressly

reserve such retained Cause of Action for later adjudication by the Debtors or the Liquidating Trustee (including, without limitation, Causes of Action not specifically identified or described in the Plan Supplement or elsewhere, or of which the Debtors may be presently unaware, or which may arise or exist by reason of additional facts or circumstances unknown to the Debtors at this time, or facts or circumstances that may change or be different from those the Debtors now believe to exist) and, therefore, no preclusion doctrine, including, without limitation, the doctrines of *res judicata*, collateral estoppel, issue preclusion, claim preclusion, waiver, estoppel (judicial, equitable, or otherwise) or laches shall apply to such Causes of Action upon or after the entry of the Confirmation Order or Effective Date based on the Disclosure Statement, Plan, or Confirmation Order, except where such Causes of Action have been released or otherwise resolved by a Final Order (including the Confirmation Order). In addition, the Debtors and Liquidating Trustee expressly reserve the right to pursue or adopt claims alleged in any lawsuit in which the Debtors are defendants or interested parties against any Entity, including, without limitation, the plaintiffs or co-defendants in such lawsuits.

(b)  Subject to the immediately preceding paragraph, any Entity to which the Debtors have incurred an obligation (whether on account of services, the purchase or sale of goods, or otherwise), or that has received services from the Debtors or a transfer of money or property of the Debtors, or that has received services from the Debtors or a transfer or money or property of the Debtors, or that has transacted business with the Debtors, or that has leased equipment or property from the Debtors, should assume and is hereby advised that any such obligation, transfer, or transaction may be reviewed by the Liquidating Trustee subsequent to the

Effective Date and may be the subject of an action after the Effective Date, regardless of whether (i) such Entity has filed a proof of claim against the Debtors in the Chapter 11 Cases; (ii) the Debtors or Liquidating Trustee have objected to any such Entity's proof of claim; (iii) any such Entity's Claim was included in the Schedules; (iv) the Debtors or Liquidating Trustee have objected to any such Entity's scheduled Claim; (v) any such Entity's scheduled Claim has been identified by the Debtors or Liquidating Trustee as disputed, contingent, or unliquidated; or (vi) the Debtors have identified any potential claim or Cause of Action against such Entity herein or in the Disclosure Statement.

I.      **No Discharge.**

Nothing contained in this Plan shall be deemed to constitute a discharge of the Debtors under Bankruptcy Code section 1141(d)(3).

## IX.

## RETENTION OF JURISDICTION

From and after the Confirmation Date, the Bankruptcy Court shall retain such jurisdiction as is legally permissible, including, but not limited to, for the following purposes:

1.      To hear and determine any and all objections to the allowance of a Claim, proceedings to estimate a Claim for any purpose, actions to equitably subordinate a Claim, proceedings seeking approval of any necessary claims reconciliation protocols, or any controversy as to the classification of a Claim in a particular Class under the Plan;

2.      To administer the Plan, the Liquidating Trust, the Trust Assets and the proceeds thereof;

DOCS_LA:332027.1

3.      To estimate or liquidate any Disputed Claims;

4.      To hear and determine any and all adversary proceedings, contested matters or applications pending on the Effective Date or otherwise relating to, arising from, or in connection with the Litigation; *provided, however*, that the Liquidating Trustee shall reserve the right to commence actions in all appropriate jurisdictions;

5.      To hear and determine any and all motions and/or objections to fix, estimate, allow and/or disallow any Claims arising therefrom;

6.      To hear and determine any and all applications by Professionals for an award of Professional Fees;

7.      To enable the Liquidating Trustee to commence and prosecute any Litigation which may be brought after the Effective Date;

8.      To interpret and/or enforce the provisions of the Plan and the injunction provided for in the Plan and to determine any and all disputes arising under or regarding interpretation of the Plan or any agreement, document, or instrument contemplated by the Plan;

9.      To enter and implement such orders as may be appropriate in the event Confirmation is for any reason stayed, reversed, revoked, modified, or vacated;

10.     To modify any provision of the Plan to the extent permitted by the Bankruptcy Code and to correct any defect, cure any omission, or reconcile any inconsistency in the Plan or in the Confirmation Order as may be necessary to carry out the purposes and intent of the Plan;

11.     To enter such orders as may be necessary or appropriate in furtherance of

DOCS_LA:332027.1

Confirmation and the successful implementation of the Plan and to determine such other matters as may be provided for in the Confirmation Order or as may be authorized under the provisions of the Bankruptcy Code;

12. To enter any orders as required by Rule 23 of the Federal Rules of Civil Procedure, to the extent made applicable to any adversary proceeding pursuant or contested matter pursuant to Bankruptcy Rules 7023 and 9014(c), as applicable; and

13. To close the Chapter 11 Cases when administration of the Liquidating Trust and the Chapter 11 Cases have been completed.

## X.

## MISCELLANEOUS

### A.     Revocation of Plan.

The Debtors reserve the right to revoke and withdraw the Plan at any time on or before the Confirmation Date.  If the Debtors revoke or withdraw the Plan pursuant to this Section, or if Confirmation or the Effective Date does not occur, then the Plan shall be deemed null and void and, in such event, nothing contained herein shall be deemed to constitute a waiver or release of any Claims by or against the Debtors or any other entity or to prejudice in any manner the rights of the Debtors or any Entity in any further proceedings involving the Debtors.

### B.     Severability of Plan Provisions.

In the event that, prior to the Confirmation Date, any term or provision of this Plan is held by the Bankruptcy Court to be invalid, void, or unenforceable, the Bankruptcy Court shall, with the consent of the Debtors, have the power to alter and interpret such term or provision to

make it valid or enforceable to the maximum extent practicable, consistent with the original

purpose of the term or provision held to be invalid, void, or unenforceable, and such term or

provision shall then be applicable as altered or interpreted. Notwithstanding any such holding,

alteration, or interpretation, the remainder of the terms and provisions hereof shall remain in full

force and effect and shall in no way be affected, impaired, or invalidated by such holding,

alteration, or interpretation. The Confirmation Order shall constitute a judicial determination and

shall provide that each term and provision hereof, as it may have been altered or interpreted in

accordance with the foregoing, is valid and enforceable pursuant to its terms.

## C.    __Exhibits.__

All exhibits attached to this Plan, the Plan Supplement, or the Disclosure Statement are,

by this reference, hereby incorporated into the Plan. The final version of all Exhibits to the Plan,

the Plan Supplement, and the Disclosure Statement will be substantially in the forms attached

hereto or thereto. The Debtors reserve the right to make non-substantive changes and corrections

to such Exhibits in advance of the Confirmation Hearing. If any Exhibits are changed or

corrected, the replacement Exhibits will be filed with the Bankruptcy Court prior to the

commencement of the Confirmation Hearing.

## D.    __Notices.__

All notices required or permitted to be made in accordance with the Plan shall be in

writing and shall be delivered personally or by nationally recognized overnight or next-day

courier service, first-class mail, electronic mail, or via facsimile with electronic confirmation of

receipt as follows:

Pachulski Stang Ziehl & Jones LLP
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, DE 19899-8705 (Courier 19801)
Tel. 302-652-4100, Fax 302-652-4400
Attn: Laura Davis Jones
ljones@pszjlaw.com

and

Maines Paper and Food Service, Inc.
and Debtor Affiliates
c/o John C DiDonato
Chief Restructuring Officer
101 Broome Corporate Parkway
P.O. Box 450
Conklin, NY 13748

## E. <u>Reservation of Rights.</u>

Neither the filing of the Plan nor any statement or provision contained in the Plan or in

the Disclosure Statement, nor the taking by any party in interest of any action with respect to the

Plan, shall: (a) be or be deemed to be an admission against interest and (b) until the Effective

Date, be or be deemed to be a waiver of any rights any party in interest may have (i) against any

other party in interest, or (ii) in or to any of the assets of any other party in interest, and, until the

Effective Date, all such rights are specifically reserved. In the event that the Plan is not

confirmed or fails to become effective, neither the Plan nor the Disclosure Statement nor any

statement contained in the Plan or in the Disclosure Statement may be used or relied upon in any

manner in any suit, action, proceeding, or controversy within or without the Chapter 11 Cases

involving the Debtors, except with respect to Confirmation of the Plan.

**F.**     **Defects, Omissions and Amendments.**

The Debtors may, with the approval of the Bankruptcy Court and without notice to all Holders of Claims or Interests, insofar as it does not materially and adversely affect Holders of Claims, correct any defect, omission, or inconsistency in the Plan in such manner and to such extent as may be necessary or desirable to expedite the execution of the Plan. The Plan may be altered or amended before or after Confirmation as provided in Section 1127 of the Bankruptcy Code if, in the opinion of the Bankruptcy Court, the modification does not materially and adversely affect the interests of Holders of Claims, so long as the Plan, as modified, complies with Sections 1122 and 1123 of the Bankruptcy Code and the Debtors have complied with Section 1125 of the Bankruptcy Code. The Plan may be altered or amended before or after the Confirmation Date but, prior to substantial Consummation, in a manner which, in the opinion of the Bankruptcy Court, materially and adversely affects Holders of Claims, so long as the Plan, as modified, complies with Bankruptcy Code Sections 1122 and 1123, the Debtors have complied with Bankruptcy Code Section 1125 and, after notice and a hearing, the Bankruptcy Court confirms such Plan, as modified, under Bankruptcy Code Section 1129.

**G.**     **Filing of Additional Documents.**

The Debtors shall file with the Bankruptcy Court such agreements, instruments, pleadings, orders, papers, or other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan.

**H. Successors and Assigns.**

The rights, benefits, and obligations of any Entity named or referred to in this Plan shall be binding on, and shall inure to the benefit of, the heirs, executors, administrators, successors, and/or assigns of such Entity.

**I. Setoffs and Recoupments.**

The Liquidating Trust may, but shall not be required to, set off against or recoup from the payments to be made pursuant to this Plan in respect of a Claim, any claim of any nature whatsoever that the Debtors, the Liquidating Trust, or the Estates, as applicable, may have against the Holder of such Claim, but neither the failure to do so or the allowance of any Claim hereunder shall constitute a waiver or release of any such claim by the Debtors, the Liquidating Trust, or the Estates, against such Holder.

**J. Tax Exemption**

Pursuant to Section 1146 of the Bankruptcy Code, the issuance, transfer, or exchange of any security under this Plan, or the execution, delivery, or recording of an instrument of transfer pursuant to, in implementation of, or as contemplated by this Plan, including, without limitation, any transfers to or by the Debtors, if on the Effective Date, and the Liquidating Trustee, if after the Effective Date, of the Debtors' property in implementation of or as contemplated by this Plan (including, without limitation, any subsequent transfer of property by the Liquidating Trust) shall not be taxed under any state or local law imposing a stamp tax, transfer tax, or similar tax or fee. Consistent with the foregoing, each recorder of deeds or similar official for any county, city or Governmental Unit in which any instrument hereunder is to be recorded shall, pursuant to the

Confirmation Order, be ordered and directed to accept such instrument, without requiring the payment of any documentary stamp tax, deed stamps, stamp tax, transfer tax, intangible tax, or similar tax.

**K.**      **Securities Exemption**

To the extent the Liquidating Trust Interests are deemed or asserted to constitute securities, the Liquidating Trust Interests and the issuance and distribution thereof shall be exempt from Section 5 of the Securities Act of 1933, if applicable, and from any state or federal securities laws requiring registration for offer or sale of a security or registration or licensing of an issuer of, underwriter of, or broker or dealer in, a security, and shall otherwise enjoy all exemptions available for distributions of securities under a plan of reorganization in accordance with all applicable law, including without limitation, Section 1145 of the Bankruptcy Code.

**L.**      **Implementation.**

Upon Confirmation, the Debtors shall be authorized to take all steps and execute all documents necessary to effectuate the provisions contained in the Plan.

**M.**      **Record Date.**

To the extent a "Record Date" is required for implementation of this Plan, the record date shall be the voting record date established by the Bankruptcy Court in the order approving the Disclosure Statement or such other date as the Bankruptcy Court may set.

**N.**      **Certain Actions.**

1.      By reason of entry of the Confirmation Order, prior to, on, or after the Effective Date (as appropriate), all matters provided for under the Plan that would otherwise

require approval of directors or stockholders of the Debtors under the Plan, including, without limitation, (i) the distribution of Cash pursuant to the Plan, (ii) the adoption, execution, delivery, and implementation of all contracts, leases, instruments, releases, and other agreements or documents related to the Plan, and (iii) the adoption, execution, and implementation of other matters provided for under the Plan involving the company or organizational structure of the Debtors, shall be deemed to have occurred and shall be in effect prior to, on or after the Effective Date (as appropriate), pursuant to the applicable general corporation law of the states in which the Debtors are chartered, organized, or incorporated, without any requirement of further action by the directors and stockholders of the Debtors, irrespective of whether the Confirmation Order specifically authorizes any such action.

2.      Effective upon the Effective Date, the Debtors' formation documents shall each be deemed amended to prohibit the issuance by the Debtors of nonvoting securities to the extent required under Section 1123(a)(6) of the Bankruptcy Code.

3.      On or as soon as practicable following the Effective Date, the Liquidating Trustee shall be authorized to cancel, annul, and extinguish all Equity Interests.

**O.      <u>Substantial Consummation.</u>**

On the Effective Date, the Plan shall be deemed substantially consummated under Bankruptcy Code Sections 1101 and 1127(b).

**P.** **Waiver of Fourteen-Day Stay.**

The Debtors request as part of the Confirmation Order a waiver from the Bankruptcy

Court of the 14-day stay of Bankruptcy Rule 3020(e) and, to the extent applicable, a waiver of

the 14-day stay of Bankruptcy Rule 6004(g).

Dated:  August 28, 2020                    By: */s/ John C. DiDonato*
                                          John C. DiDonato
                                          Chief Restructuring Officer of
                                          Maines Paper and Food Service, Inc.
                                          And Affiliated Debtors

DOCS_LA:332027.1